206 U.S. 441 (1907)
ILLINOIS CENTRAL RAILROAD COMPANY, GULF AND SHIP ISLAND RAILROAD COMPANY, SOUTHERN RAILROAD COMPANY
v.
THE INTERSTATE COMMERCE COMMISSION.
No. 588.
Supreme Court of United States.
Argued April 22, 23, 1907.
Decided May 27, 1907.
APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.
*450 Mr. Ed. Baxter for appellants.
Mr. L.A. Shaver, Mr. T.M. Miller and Mr. Marcellus Green, with whom Mr. Garner Wynn Green was on the brief, for appellee.
*454 MR. JUSTICE McKENNA delivered the opinion of the court.
Counsel for appellants in his oral argument made the declaration that it would not be necessary for this court to open the pages of testimony contained in the record, and says in his supplemental brief:
"I do not insist that this court shall read the voluminous testimony contained in these records, but I do most respectfully ask it to lay down the rules or principles of transportation law which are fairly involved in the just determination of these cases, and to remand them to the Commission to be re-examined upon the testimony in conformity with the principles of transportation law to be announced by this court."
To what, then, shall we resort? How shall we determine what "principles of transportation law" were involved? How determine whether they were recognized and applied, or denied and rejected by the Commission, and, necessarily, by the Circuit Court? An examination of the testimony by concession of counsel is out of the question. And the findings of the Commission are made by law prima facie true. This court has ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience. Louisville & Nashville Railroad Co. v. Behlmer, 175 U.S. 648; East Tenn. &c. Railroad Co. v. Interstate Commerce Commission, 181 U.S. 1, 27. And in any special case of conflicting evidence a probative force must be attributed to the findings of the Commission, which, in addition to "knowledge of conditions, of environment and of transportation relations," has had the witnesses before it and has been able to judge of them and *455 their manner of testifying. In the case at bar these considerations are reinforced by a concurrent judgment of the Circuit Court.
The question is one of the reasonableness of a rate, and such a question was said to be one of fact in Texas & Pacific Ry. v. Interstate Commerce Commission, 162 U.S. 197; C.N.O. & T.P. Ry. v. Interstate Commerce Commission, 162 U.S. 184. In these cases, however, it was declared that the conclusions of the Commission are subject to review if it excluded "facts and circumstances that ought to have been considered." Upon this declaration appellants rely, and justify their invocation that this court express and enforce the principles of transportation which, they contend, the Commission disregarded; and appellants venture the observation that unless this be done "there will be no settled principles of law for the guidance of either the Commission or of the courts," and that "the interstate railroad companies will be the only persons in this country who will not be able to obtain the opinion of the courts upon questions of law which vitally affect their interest." We think the apprehension is groundless and is demonstrated to be groundless by the cases cited. In all of them legal propositions were reviewed as elements in the inquiry of the reasonableness of a rate. Those cases, however, are in marked contrast to the pending case. It will be observed that in them the instances were very simple. There was a salient circumstance in each of them about which there was no uncertainty. In other words, it was unconfused by dispute and was not put to question by a conflict of testimony. A definite legal proposition unmixed with fact was presented and the only act of judgment exercised by the Commission was to reject it.
In Cincinnati, New Orleans & Texas Pacific Railway v. Interstate Commerce Commission, passing on the effect of a shipment on a through bill of lading to give jurisdiction to the Commission (in which the Commission was sustained), the questions presented were the power in the Commission *456 to fix a maximum rate, and whether competitive conditions could be considered by a railroad in fixing a greater charge for a shorter than a longer distance on its own line. It was decided that the power to pass on the reasonableness of an existing rate did not imply the power to prescribe a rate. On the conditions affecting competition, it was not found necessary to pass, but the following passage it worth the quoting as bearing on the contention of appellants:
"It has been forcibly argued that, in the present case, the Commission did not give due weight to the facts that tended to show that the circumstances and conditions were so dissimilar as to justify the rates charged. But the question was one of fact, peculiarly within the province of the Commission, whose conclusions have been accepted and approved by the Circuit Court of Appeals, and we find nothing in the record to make it our duty to draw a different conclusion."
In Texas & Pacific Railway v. Interstate Commerce Commission ocean competition as constituting a dissimilar condition and as justifying a difference in rates between import and domestic traffic was the circumstance considered. The Interstate Commerce Commission had ruled against such competition as a factor and condemned rates made in view of it to be undue and unjust. The court observed:
"But we understand the view of the Commission to have been that it was not competent for the Commission to consider such facts  that it was shut up by the terms of the act of Congress, to consider only such `circumstances and conditions' as pertained to the articles of traffic after they had reached and been delivered at a port of the United States or Canada."
And further:
"We have, therefore, to deal only with a question of law, and that is, what is the true construction, in respect to the matters involved in the present controversy, of the act to regulate commerce? If the construction put upon the act by the Commission was right, then the order was lawful; otherwise it was not."
*457 The ruling of the Commission was reversed.
In Interstate Commerce Commission v. Alabama Midland Railway, 168 U.S. 144, there was passed upon a decision of the Commission that the competition of river lines of transportation was not a factor to be considered when determining whether property transported over the same line is carried under "substantially similar circumstances and conditions," as that phrase is found in the fourth section of the Interstate Commerce Act. The decision was declared to be an erroneous construction of the act.
In Louisville & Nashville Railroad Co. v. Behlmer (passing by subordinate questions) the dominant element was the construction of the fourth section of the Interstate Commerce Act. The Commission and the Circuit Court of Appeals, it was said, "mistakenly considered as a matter of law that competition, however material, arising from carriers who were subject to the act to regulate commerce could not be taken into consideration, likewise that competition, however substantial, not originating at the initial point of the traffic, was equally as a matter of law excluded from view."
In all these cases, therefore, there was a single, distinct and dominant proposition of law which the Commission had rejected, and the exact influence of which, in its decisions, could be estimated. Indeed, they were mere constructions of the statute, the delegation of the Commission's duties and power. Let us now see what the propositions are which appellants propose for our adoption. They are presented as presumptions of law, which dispense with evidence until rebutted or countervail evidence by their probative force. (1) That the rate published by a carrier is reasonably low. (2) A rate upon a commodity, made by the competition of carriers, is reasonably low, and the burden is on him who assails it. (3) A rate upon a commodity as low, or lower, than the majority of rates charged by other carriers for the transportation of the same grade of commodities for similar distances in the same or other territory, is reasonably low, and the burden is upon him who *458 insists that it is unreasonably high. (4) A rate charged by a carrier which has the "strongest possible motive" to develop and increase a traffic in a particular commodity, and has maintained such rate for a "long series of years," so as to have induced a large and continuous increase of business in that commodity and of the capital invested, is reasonably low. (5) Rates being so adjusted upon a commodity, so as to enable it to move with profit to the shipper, whatever the conditions of the market, reducing the rates as the market declines, only increasing them as the market improves, a particular increase is reasonable, if it be shown that the percentage of increase has been greater in the price of the commodity than in the rates on it. (6) Rates reduced to meet a market depression and kept in effect during the depression, and increased when the depression ceases which does not cause the increased rates to exceed the rates that were maintained by the carrier, prior to the depression, are reasonable. (7), (8) Increase in rates upon all commodities impartially to meet largely increased expenditures on account of an abnormal increase in the volume of traffic is reasonable, "provided the gross earnings of the carrier yield less than the normal proportion of net earnings." Or provided the percentage of increase has been greater in the operating expenses of the carrier than in the rates upon the commodity. (9), (10) Upon the supposition that certain improvements have been made necessary by "an abnormal increase of traffic," they should be taken into account in determining the reasonableness of an increase of rates upon a commodity, whether as a matter of bookkeeping the expenditures should be charged to capital account or to the operating expenses; and without regard to the fact whether such expenditures have been paid out of the carrier's earnings or have been provided for by the issuance of bonds. (11) A rate on a commodity is profitable if it exceeds the cost of its movement; and, yet, the rate may be unreasonably low, if it does not contribute its fair share to operating expenses, taxes and fixed charges.
*459 If these propositions should be granted as axioms of transportation there is the difficulty, as we have already pointed out, of determining to what extent  that is, whether to prejudicial extent, if at all  they were disregarded by the Commission and by the Circuit Court. The Circuit Court affirmed the order of the Commission, and it is an instant assumption that the court considered all the elements in the testimony and inferences from it. And the propositions of appellant are inferences of mixed law and fact, hence disputable  may be overcome or counterpoised, and, therefore, the court in reaching its ultimate judgment may have given them all the weight to which they were entitled.
It is almost impossible to discuss the contentions of appellants without bringing forward the elemental. A presumption is the expression of a process of reasoning, and most, if not all, the rules of indirect evidence may be expressed as such. We cannot go far in the investigation of any controversy without finding ourselves compelled to infer one fact from another, but we would not therefore be justified in declaring such inferences legal axioms. It is to this that appellants invite us and seek to erect disputable inferences from conduct that may have many explanations into intendments of law.
In this connection Texas Pacific Railway v. Interstate Commerce Commission, supra, is an instructive case. In that case, we have seen, it was decided that whether the rate was reasonable or unreasonable, was a question, whatever its theoretical nature, for the tribunal that decides upon matters of fact. Among other cases cited to sustain that position was Denaby Main Colliery Company v. Manchester &c. Railway Company, 3 Railway and Canal Traffic Cases, 426. In that case it was declared that reasonableness of a rate was a question of fact and not reviewable by an appellate court, unless circumstances which ought to have been considered were not considered, and that a decision must be arrived at fairly looking at all the circumstances that are proper to be looked at. The appellant in the case contended against the consideration by the railroad *460 way commissioners of competition between two places, and the Court of Appeals, replying, said:
"If the appellants can make out that, in point of law, that is a consideration which cannot be permitted to have any influence at all, that those circumstances must be rigidly excluded from consideration, and that they are not circumstances legitimately to be considered, no doubt they establish that the court below has erred in point of law. But it is necessary for them to go as far as that in order to make any way with this appeal, because once admit that to any extent, for any purpose, the question of competition can be allowed to enter in, whether the court has given too much weight to it or too little, becomes a question of fact and not of law. The point is undoubtedly a very important one."
And it may be well to say here as a suggestive principle throughout that, it was pointed out, such conclusions of fact were "to be arrived at, looking at the matter broadly and applying common sense to the facts that are proved." The remarks of Willes, J., in Phipps v. London & North-Western Railway, 2 Q.B.D. 1892, pp. 229, 236, when the case was before the Railway Commissioners, were in effect approved. This court also quoted them. Willes, J., said, speaking of the questions of undue or unreasonable preference or advantage to or in favor of any particular person under section 2 of the Railway and Canal Traffic Acts, that they were eminently practical, "and if this court once attempts the hopeless task of dealing with questions of this kind with any approach to mathematical accuracy, and tries to introduce a precision which is unattainable in commercial and practical matters, it would do infinite mischief and no good."
It is conceded, as we have said, that the presumptions contended for by appellants are mixed of law and fact, except, may be, those which we shall presently consider. If either element is dominant in such presumptions, it must be that of fact. In other words, the fact must be ascertained before the law draws its inference. This is especially pertinent to *461 the propositions urged by appellants. Let us illustrate. Take, for example, the second proposition that "a rate upon a commodity made by competition of carriers is reasonably low, and the burden is on him who assails it." But suppose competition is not established or is disproved, what becomes of the inference and the onus of proof dependent upon it? The question marks the condition that appellants encounter in the findings of the Commission. The findings of the Commission in effect negative the facts upon which the propositions depend. In still greater degree there is illustration in the first proposition. That proposition is an inference from an inference, as we shall presently point out. The reasonableness of the rate is inferred from competition, and competition is inferred from the publication of the rate.
This comment, it may be said, is not applicable to the ninth and tenth propositions of appellants, as they present propositions of law which were not only disregarded by the Commission, but the antithesis of them was asserted in the eighth finding. This contention must be specifically considered. The Commission finds that the net and gross earnings of the appellant have grown from year to year, and also that what they have reported as operating expenses have also grown. But in these operating expenses there were included "expenditures for real estate, right of way, tunnels, bridges, and other strictly permanent improvements, and also for equipment, such as locomotives and cars." The Commission expressed the opinion that such expenditures should not be charged to a single year, but "should be, so far as practicable and so far as rates exacted from the public are concerned, `projected proportionately over the future.'" And it was said: "If these large amounts are deducted from the annual operating expenses reported by the defendants (appellants), it will be found that the percentage of operating expenses to earnings has in some extent diminished and in others increased to no material extent." The exact effect of the difference of view between appellants and the Commission as to operating expenses there is no test, *462 but it cannot be said, even if the Commission was wrong as to such expenses, that error in its ultimate conclusion is demonstrated or that the correctness of the conclusion is made so doubtful as to justify a reversal. The findings show that the old rates were profitable and that dividends were declared even when permanent improvements and equipment were charged to operating expenses. But may they be so charged? Appellants contend that the answer should be so obviously in the affirmative that it should be made an axiom in transportation. On principle it would seem as if the answer should be otherwise. It would seem as if expenditures for additions to construction and equipment, as expenditures for original construction and equipment, should be reimbursed by all of the traffic they accommodate during the period of their duration, and that improvements that will last many years should not be charged wholly against the revenue of a single year. But it is insisted that Union Pacific Railway Co. v. United States, 99 U.S. 402, establishes the contrary. That case was not concerned with rates of transportation or the rule which should determine them against shippers. It was concerned with the construction of the words "net earnings" in an act of Congress, five per cent of which earnings were provided to be applied annually to a loan by the Government to the railroad. Considering the provision of the act and its purpose, it was concluded "that the true interest of the Government" was "the same as that of stockholders, and would be subserved by encouraging a liberal application of the earnings to the improvement of the works." "It is better," it was said, "for the ultimate security of the Government in reference to the payment of its loan, as well as for the service which it may require in the transportation of its property and mails, that a hundred dollars should be spent in improving the works, than that it should receive five dollars towards the payment of its subsidy. If the five per cent of net earnings, demandable from the company, amounted to a new indebtedness, not due before, like a rent accruing upon a lease, a more *463 rigid rule might be insisted on. But it is not so; the amount of the indebtedness is fixed and unchangeable. The amount of the five per cent and its receipt at one time or another is simply a question of earlier or later payment of a debt already fixed in amount. If the employment of any earnings of the road in making improvements lessens the amount of net earnings, the Government loses nothing thereby. The only result is, that a less amount is presently paid on its debt, while the general security for the whole debt is largely increased." The interest of the Government in the improvement of the road was even greater than that of a stockholder. This was manifest from its munificent gift of lands, in addition to its generous loan of credit. As benefactor of the road and as creditor of it, as a Government concerned with the development of the country, as a money lender concerned with the extent of security, "the true interest" of the United States might be that revenue should be applied to improvements. Payment of the debt was only postponed, not denied, and this and the other considerations, might well determine the construction of words in the statute which were capable of different meanings. But such is not the relation or concern of a shipper of lumber. His right is immediate. He may demand a service. He must pay a toll, but a toll measured by the reasonable value of the service. The elements of that value may be many and complex, not always determinable, as we have seen, with mathematical accuracy, but, we think, it is clear, that instrumentalities which are to be used for years should not be paid for by the revenues of a day or year; and this is the principle of returns upon capital which exists in durable shape.
The first proposition submitted by appellants may also be said to be so far absolute and independent of evidence as to be considered as a presumption of law simply. This is contended on the authority of Van Paten v. Chicago, Milwaukee & St. Paul Railway Co., 81 Fed. Rep. 545. It is difficult to analyze the case briefly. It was an action of damages against the railroad for charging unjust and unreasonable rates under *464 the assumption that sections 8 and 9 of the Interstate Commerce Act gave such an action, though the railroad had charged according to the schedule of rates filed with the Interstate Commerce Commission. The answer of the railroad set up the schedule and that rates had been charged shippers in accordance with it. The court overruled a demurrer to the answer and adjudged the defense good. The court discussed the question in an elaborate opinion, and, led by the difficulties of applying all of the provisions of the act, which were enacted, the court observed, to correct "the mode in which carriers imposed their charges," sought in the act itself a standard of reasonableness.
The court, in its opinion, referred to the evils which had existed  rebates from published schedules, preferences and discriminations against shippers  and the purpose and hope of the act to correct them through the requirement of an imperative statutory standard, and by that, and other requirements, to establish free competition between railroads and, as a result of competition, reasonable rates. But it was not said or intended to be said that competition followed as a presumption of law in any given case. The court did not intend to assert a rule deduced from the conduct of railroads  conduct so far constant that the law would base a presumption upon it and forever fix it as one of its intendments. Indeed the court meant to do no more than to deny a right of action for unreasonableness in the rates as filed. And this court, in Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U.S. 426, has decided that the redress of a shipper for such unreasonableness must be through the Interstate Commerce Commission. It is certain that a presumption that was sufficient to defeat an action in the Circuit Court could not be urged to defeat an inquiry by the Commission. Of course, if a complaint should be filed before the Commission and no proof adduced to support it, we cannot doubt but that the complaint would be dismissed; but this because of the principle that the party who asserts the affirmative in any controversy ought *465 to prove the assertion, and that he who denies may rest on his denial until, at least, the probable truth of the matter asserted has been established. "The reason is obvious: to all propositions, which are neither the subject of intuitive or sensitive knowledge, nor probabilized by experience, the mind suspends its assent until proof of them is adduced." Best on Presumptions, sec. 32.
There are other contentions of appellants which we think are untenable. One only needs comment. It is said that it was error to hold the advance unreasonable and unjust because the charges made on lumber to Cairo and other points on the Ohio River "are mere divisions of through rates, the justness of which neither the Interstate Commerce Commission nor the Circuit Court has any jurisdiction to determine." Indeed, it is said, to do so is an exercise of a legislative function. We think the contention is in effect answered by Cincinnati, New Orleans & Texas Pacific Railway v. Interstate Commerce Commission, 162 U.S. 184. If the contention is intended to be as extensive as its words seemingly make it, it would withdraw from the supervision of the Interstate Commerce Commission and from the courts every shipment over two or more railroads. There necessarily must be some apportionment of the rates between such roads, and whether the advance should be made in the rates over one road or the other, or in the rates over all, can make no difference. In other words, it is competent for the Commission or the courts to consider the through rate, however composed. It must not be overlooked that the Commission and the Circuit Court found that the advance in the case at bar was made by agreement between the roads, and was not the individual action of each, induced by competition. It is true the contrary fact is asserted. It is asserted, that such action was the result of competition, and, that the "legal value" to which competition was entitled was not given it. The argument to support the contention has not convinced us. The inquiry was essentially one of fact, and the attempt to make competition an inference of law and dominating against the *466 findings of the Commission and their affirmance by the Circuit Court we have already rejected.
But little more discussion is necessary. The concession of counsel with which we have commenced this opinion is a frank recognition of the effect which this court has given to the decisions of the Interstate Commerce Commission on questions of fact. And we have said very recently: "The statute gives prima facie effect to the findings of the Commission, and when those findings are concurred in by the Circuit Court, we think they should not be interfered with, unless the record establishes that clear and unmistakable error has been committed." Cincinnati, Hamilton & Dayton R.R. v. Interstate Commerce Commission, ante, page 142.
It is true, appellants assert, that clear and unmistakable error has been committed, but upon ground untenable as we have seen. And the present case above all others calls for the application of the rule. The question submitted to the Commission, as we have said, with tiresome repetition perhaps, was one which turned on matters of fact. In that question, of course, there were elements of law, but we cannot see that any one of these or any circumstances probative of the conclusion was overlooked or disregarded. The testimony was voluminous. It is not denied that it was conflicting and, by concession of counsel, it included a large amount of testimony taken on behalf of appellants in support of the propositions contended for by them. Whether the Commission gave too much weight to some parts of it and too little weight to other parts of it is a question of fact and not of law. It seems from the findings, report and conclusions of the Commission that it considered every circumstance pertinent to the problem before it.
Further testimony was taken by the Circuit Court and its judgment confirmed that of the Commission and approved its order.
Decree affirmed.
MR. JUSTICE MOODY took no part in the decision of this case.
MR. JUSTICE BREWER dissents.