**DAVIS, Director General of Railroads, v. PRAIRIE PIPE LINE CO.**

(Circuit Court of Appeals, Eighth Circuit. April 7, 1924.)

No. 6412.

1. **Commerce ☞83—Decisions of Interstate Commerce Commission entitled to great weight.**

   The decisions of the Interstate Commerce Commission on questions properly before it are entitled to great weight, and as to questions of fact are conclusive.

2. **Carriers ☞202—Relation of tariffs to one another in common territory is mixed question of law and fact.**

   The construction of a freight tariff is a question of law, but the relation of tariffs to one another in a common territory is not entirely a question of law, but more in the nature of a mixed question of law and fact.

3. **Carriers ☞202—When it is doubtful which of two tariff rates applies, the court may consider how each would operate as a matter of justice.**

   If tariffs are not clear, and it is doubtful from the tariffs filed and their interrelationship one to another what rate applies in a given case, the court is warranted in considering how the rates claimed as applicable would operate as a matter of justice in getting at the railroad's intention with relation to the tariffs.

4. **Carriers ☞26—Clearly established rate must govern, though unjust.**

   A rate which is the clearly established rate must govern, though unjust.

5. **Carriers ☞26—Commodity rather than class rates held to govern in certain shipments.**

   Decision of the District Court that, as between the commodity rates and class rates in an established tariff, the commodity rates governed as to certain shipments, which followed the decision of the Interstate Commerce Commission, held correct, and affirmed.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action at law by the Prairie Pipe Line Company against James C. Davis, Director General of Railroads, as Agent, etc. Judgment for plaintiff, and defendant brings error. Affirmed.

Alexander M. Bull, of Washington, D. C. (John F. Finerty, of Washington, D. C., W. W. Brown, of Parsons, Kan., and W. F. Lilleston, of Wichita, Kan., on the brief), for plaintiff in error.

E. H. Hogueland, of Topeka, Kan. (T. J. Flannelly and Paul B. Mason, both of Independence, Kan., on the brief), for defendant in error.

Before STONE and KENYON, Circuit Judges, and PHILLIPS, District Judge.

KENYON, Circuit Judge. The Prairie Pipe Line Company, defendant in error, brought suit in the District Court of the United States for the District of Kansas, Third Division, against James C. Davis, Director General of Railroads, plaintiff in error here, seeking recovery for alleged overcharges on shipments in 1918 of secondhand wrought iron pipe from Cleveland and Kiefer, Okl., to Tiffin, Tex. The ship-

ment from Cleveland to Tiffin comprised two cars, upon which plaintiff in error collected for transportation 56 cents per 100 pounds. On the shipment of the car from Kiefer to Tiffin the freight rate charged was 54 cents per 100 pounds. These rates were the regularly published fifth-class distance rates per hundredweight under Southwestern Lines' Tariff 26–T, Leland's I. C. C. No. 1048.

Defendant in error claims that these charges were excessive, and that the proper rate from both points to Tiffin, Tex., under one of plaintiff in error's tariffs, was 35 cents per 100 pounds, and that the overcharge amounted to $911.68 on the shipment of the three cars. Defendant in error filed complaint with the Interstate Commerce Commission, asking recovery of this alleged excess charge, and the Interstate Commerce Commission sustained its claim. Plaintiff in error filed with the Interstate Commerce Commission petition for rehearing, which was denied on the 9th day of May, 1921. A further petition for rehearing was also denied October 3, 1921. Again, on March 30, 1922, the Commission further considered the matter, and made an order directing plaintiff in error to pay defendant in error, on or before May 15, 1922, the said sum of $911.68, with interest, which plaintiff in error failed to do.

The case was tried in the District Court on an agreed statement of facts, and the court found that defendant in error was entitled to judgment for the said sum of $911.68, together with interest and costs. The question in the case is: What were the tariff rates applicable to these shipments?

There is no dispute that the rates collected, except an admitted excess on one of the cars, where $1.26 per 100 pounds was collected, were the fifth-class distance rates of 56 cents per 100 pounds from Cleveland and 54 cents per 100 pounds from Kiefer, the same being the rates published in Southwestern Lines' Tariff No. 26–T, Leland's I. C. C. No. 1048. These rates would govern unless there were applicable commodity rates. Defendant in error claims, and the Interstate Commerce Commission found, that the correct rate was a commodity rate of 35 cents per 100 pounds, and the same is based on the following situation: At the time of the shipments in question there was in effect by virtue of one of plaintiff in error's tariffs a rate of 35 cents per 100 pounds on wrought iron pipe in carloads from points in the Kansas City territory to points in the Dallas-Fort Worth group in Texas. Tiffin is in this Dallas-Fort Worth group. The Kansas City territory was described in this tariff, which was known as Southwestern Lines' Tariff No. 42–N, Leland's I. C. C. No. 1173. This tariff stated on its title-page as follows:

" 'Local, joint and proportional tariff applying on classes and commodities from points in the following traffic territories, including points basing thereon, a complete list of which will be found in Southwestern Lines' Territorial Directory No. 1–D, F. A. Leland's I. C. C. No. 1053, or reissues thereof: Kansas City Territory, Kansas Group No. 1, Kansas Group No. 2, Kansas Group No. 3, to Texas points specified on pages 39 to 63, inclusive,' of tariff."

The 35-cent rate was published in item 1728 of the Southwestern Lines' Freight Tariff No. 42–N, Leland's I. C. C. No. 1173. This

tariff therefore refers on its title page to Southwestern Lines' Territorial Directory No. 1–D, F. A. Leland's I. C. C. No. 1053, or reissues thereof. At the time of the shipments there was in effect, lawfully published and filed with the Interstate Commerce Commission, Southwestern Lines' Territorial Directory No. 1–E, Leland's I. C. C. No. 1205, which was a reissue of Southwestern Lines' Territorial Directory No. 1–D, Leland's I. C. C. No. 1053, and this showed list of stations in various states, including Oklahoma, their railroad and territorial location; also special class and commodity rate bases applicable on traffic to and from Arkansas, Louisiana, New Mexico, Oklahoma, and Texas. Item No. 20 of this Southwestern Lines' Territorial Directory No. 1–E, Leland's I. C. C. No. 1206, is as follows:

"Exhibit F.

"General Application of Bases.

"Application of Bases at Points Not Specifically Provided for.

"Item No. 20.

"This Territorial Directory contains (with few exceptions) only the names of stations having a population of 500 or more. From or to stations not indexed (see notes A, B, and C), in this directory, the rate will be the same as from or to the next more distant station on the same line which is indexed, except that this provision will not apply from or to points west of the Kansas-Colorado state line, or from points west of a line beginning at Omaha, Neb., and extending via the Union Pacific R. R., through Fremont, thence via the C. & N. W. Ry., through Linwood, Brainerd, Seward, Nora, Neb., thence via the C., R. I. & P. Ry. to Nelson, Neb., thence via the C., B. & Q. R. R. to and including Superior, Neb."

This is the item which defendant in error claimed authorized the application of the 35-cent rate on the material shipped from Cleveland and Kiefer to Tiffin, Tex., and is the item on which the Interstate Commerce Commission based its opinion granting reparation. This Southwestern Lines' Territorial Directory does not contain the names of Cleveland and Kiefer. Consequently, if the tariff referred to was applicable, the rates, under item 20, would be those from the next more distant station on the same line which is indexed. As to Cleveland, the next more distant station indexed is Coffeyville, Kan., on the Missouri, Kansas & Texas Railway, 81 miles north of Cleveland. The next more distant station to Kiefer, Okl., indexed in the Directory as located in the Kansas City territory, is Baxter, Kan., a station on the St. Louis & San Francisco Railway, 122 miles north of Kiefer. Hence it is claimed the rates from Coffeyville and Baxter to Tiffin, Tex., should apply to Cleveland and Kiefer, and the Commission and the court so found.

It is earnestly contended that the Southwestern Lines' Tariff No. 42–N, Leland's I. C. C. No. 1173, and Southwestern Lines' Territorial Directory do not apply to points south of the Oklahoma-Kansas line; that Cleveland and Kiefer are specifically provided for in the Oklahoma Tariff, and that the holding of the Commission and of the trial court moves the southern boundary of the Kansas City Group, as defined in the tariff, 100 miles south of where the tariff places it. The Southwestern Lines' Tariff No. 42–N, Leland's I. C. C. No. 1173,

refers on its title-page, as we have heretofore indicated, to points in certain traffic territory found in Southwestern Lines' Territorial Directory No. 1–D, F. A. Leland's I. C. C. No. 1053, and in the reissue of this directory are found stations in Oklahoma. Hence the tariff is evidently intended to cover for some purposes stations below the Kansas-Oklahoma line.

If there were commodity rates that would apply, it would remove the application of the class rates to or from the same point, for—

"Item 36, appearing on page 86 of Southwestern Lines' Tariff No. 26–T, Leland's I. C. C. No. 1048, and item 12, appearing on page 86 of Southwestern Lines' Tariff No. 42–N, Leland's I. C. C. 1173, in effect when the shipments moved, provide the following rule for application of class and commodity rates: 'Whenever a carload or less than carload commodity rate is established it removes the application of the class rates to or from the same points on that commodity in carload quantities or less than carload quantities as the case may be, except when and in so far as alternative use of class and commodity rates that are contained in separate sections of this tariff is specifically authorized in this tariff.' "

Under this somewhat complicated situation is there justification for the application of the 35-cent commodity rate to these shipments? The Interstate Commerce Commission has passed on these matters, and has found that the correct rate to apply on the three cars was 35 cents per 100 pounds, basing it on section 20 of Southwestern Lines' Territorial Directory No. 1–E, Leland's I. C. C. No. 1206, the intermediate application provision. They have held that by virtue of this intermediate application provision the freight rate charged on the carload shipments in question from Cleveland and Kiefer to Tiffin should have been the rate established from Coffeyville and Baxter, they being the next more distant stations on the same line indexed.

[1] Courts have given weight to the findings of the Interstate Commerce Commission as to questions properly before them. As to questions of fact, where there was ample evidence to sustain them, the Supreme Court of the United States has said the findings of the Commission thereon are conclusive. Louisville & Nashville Railroad Co. v. United States et al., 245 U. S. 463, 38 Sup. Ct. 141, 62 L. Ed. 400; United States of America v. Louisville & Nashville R. R. Co., 235 U. S. 314, 320, 35 Sup. Ct. 113, 59 L. Ed. 245. In Cincinnati, etc., Ry. Co. v. Interstate Commerce Commission, 206 U. S. 142, 154, 27 Sup. Ct. 648, 653 (51 L. Ed. 995) the court said:

"The statute gives prima facie effect to the findings of the Commission, and when those findings are concurred in by the Circuit Court, we think they should not be interfered with, unless the record establishes that clear and unmistakable error has been committed."

The court also, in Illinois Central R. R. v. Inter. Com. Comm., 206 U. S. 441, 454, 27 Sup. Ct. 700, 704 (51 L. Ed. 1128), referring to the findings of the Commission, said:

"This court has ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience."

If such findings were purely arbitrary, or transcended the limits of their authority, they would not, of course, be binding. Interstate Com-

merce Commission v. Louisville & Nashville R. R. Co., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431; Seaboard Air Line Ry. Co. et al. v. United States et al., 254 U. S. 57, 41 Sup. Ct. 24, 65 L. Ed. 129.

[2] The construction of a freight tariff is a question of law. Great Northern Ry. Co. et al. v. Merchants' Elevator Co., 259 U. S. 285, 42 Sup. Ct. 477, 66 L. Ed. 943. The relation, however, of tariffs one to another in a common territory is not entirely a question of law, but more in the nature of a mixed question of law and fact. We are not bound, of course, by the finding of the Commission as to a matter of law; but it is a board with special experience and knowledge concerning these rate questions, and its decisions are helpful to the courts in arriving at correct conclusions.

It is claimed by the plaintiff in error that the Interstate Commerce Commission has made contrary findings in certain cases before it, particularly citing United Iron Works Co. v. Director General, 61 Interst. Com. Com'n R. 33; Indiahoma Refining Co. v. Director General, 73 Interst. Com. Com'n R. 685; Gulf Production Co. v. Director General, 80 Interst. Com. Com'n R. 39. It may be said that the second petition for rehearing of this case before the Commission was filed after the decision of the Commission in the United Iron Works Co. Case. Hence the Commission must have felt that this case was different in legal application from that. Otherwise the United Iron Works Case would be very persuasive. The other two cases cited seem to be merely questions of unreasonable rates, and the intermediate application provisions were not considered.

[3, 4] In view of the fact that the intermediate application referred to, and upon which the decision of the Commission was based, states that it is for application at points not specifically provided for, and in view of the further fact that Cleveland and Kiefer are specifically provided for in the Oklahoma Tariff, we consider the question presented one of some doubt; but if tariffs are not clear, if it is doubtful from the tariffs filed and their interrelationship one to another what the rates really are, a court is warranted in considering how the rates claimed as applicable would operate as a matter of justice in getting at the railroad's intention with relation to the tariffs. They should not be permitted to use ambiguous rates to work injustice to shippers. The trial court pointed out very clearly the injustice of plaintiff in error's contention, although, if it were clear what the rates were as applicable to this situation, even though unjust, they would be the established rates, and would govern. A rate may be unjust and yet be the established one. Penna. R. R. Co. v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Louisville & Nashville R. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, 250 U. S. 577, 40 Sup. Ct. 27, 63 L. Ed. 1151.

[5] If the railroad's contention is correct, a shipment of secondhand wrought iron pipe from Cleveland, Okl., to Tiffin, Tex., would take a rate of 56 cents per 100 pounds, while a shipment of the same material from Coffeyville, Kan., 81 miles further distant upon the same

railroad, carried through the town of Cleveland, would take a 35-cent rate. The shipment from Kiefer to Tiffin over the St. Louis & San Francisco Railroad would take a rate of 56 cents per 100 pounds while a shipment from Baxter, Kan., 122 miles north of Kiefer, passing through Kiefer on its way to ·the same destination, would take a rate of 35 cents per 100 pounds. To justify such situation it must be certain that the legal tariff rate creates it.

We think the commodity rate of 35 cents per 100 pounds can be sustained by virtue of the intermediate application provision in plaintiff in error's tariff referred to. Our conclusion is that the order of the District Court was correct. We see no error in its conclusion as to interest.

The judgment is affirmed.