# Staunton

## SOUTH EAST PUBLIC SERVICE CORPORATION OF VIRGINIA, A CORPORATION V. COMMONWEALTH OF VIRGINIA, AT THE RELATION OF STATE CORPORATION COMMISSION.

September 19, 1935.

Present, All the Justices.

The opinion states the case.

*Hunton, Williams, Anderson, Gay & Moore,* for the appellant.

No appearance for the appellee.

EGGLESTON, J., delivered the opinion of the court.

South East Public Service Corporation of Virginia was chartered by the State Corporation Commission on February 10, 1931, under section 3865, chapter 150, of the Code of Virginia, to conduct a telegraph or telephone business, or both. On May 25, 1935, the corporation, through its counsel, presented to the Commission a draft of a proposed amendment to its charter which in terms authorized the corporation to conduct several different kinds of public service, to-wit, a telephone business, a telegraph business, an electric light, heat and power business, a distribution of artificial and natural gas, and a distribution and supply of water.

The Commission reached the conclusion that the corporation could not, under section 3865 of the Code, be authorized by an amendment to engage in any public service in addition to that for which it was chartered, and from the order refusing to pass the amendment this appeal was taken.

Since section 3780 of the Code, as amended by Acts 1928, chapter 456, permits any public service corporation organized under the provisions of chapter 150 to make, by amendment, any "alteration or extension of its charter that it may desire," so long as such alteration or extension contains "only such provisions as would be allowable or proper to be contained in the original certificate or articles of association if made at the time of making such amendment, alteration or extension," the question presented, in its final analysis, is whether a corporation (other than a railroad company) may, under section 3865, be chartered for the purpose of engaging in more than one form of public service.

A determination of the question turns on the proper interpretation of the "First" subdivision of section 3865, which is as follows:

"*Section 3865. How telegraph, telephone, canal, turnpike, etc., corporations to be organized; what articles of association to state.*—First. Any number of persons not less than five, may, by executing, filing and recording articles of association as hereinafter set forth, associate under the provisions and subject to the requirements of this chapter, to establish a corporation to purchase, lease, construct, maintain and operate telegraph or telephone lines, or both, a canal, a turnpike, or any other works, except a railroad intended to be used for public service, in which articles of association there shall be stated:

"(a) The name of the corporation.

"(b) The nature or character of the works to be purchased, leased, or constructed, maintained and operated, and whether local to any city or county; and if so local, the name of the city or county in which the same is constructed or to be constructed, maintained and operated.

"(c) If a telegraph or telephone line, canal, turnpike or other works, constructed, or proposed to be constructed, through or into two or more cities or counties, then the principal terminal places thereof.

"(d) Whether local or not, the estimated length of the proposed telegraph or telephone line, canal or tunpike, and if any other works intended to be used for public service, the estimated extent of such works and the length of any line of construction or improvement connected, or to be connected therewith; and if any of the same are constructed, or intended to be constructed, through or into two or more cities or counties, then the name of each city or county through or into which the same is constructed, or intended to be constructed.

"(e) If a bridge, viaduct, aqueduct or tunnel corporation, the approximate location of its work of improvements, its estimated length and width, and the general character of the materials proposed to be used in construction."

It will be observed that this section authorizes the creation of a corporation "to purchase, lease, construct, main-

tain and operate telegraph or telephone lines, or both, a canal, a turnpike, *or* any other works, except a railroad intended to be used for public service, * * *." (Italics supplied.) The petitioner contends that the italicized word "or" in this phrase should not be given a literal disjunctive meaning, but should be given the conjunctive meaning of "and." In other words, it insists that by judicial interpretation the phrase should be reconstructed so as to authorize the creation of a corporation "to purchase, lease, construct, maintain and operate telegraph *and* telephone lines, a canal, a turnpike, *and* any other works, except a railroad intended to be used for public service."

To accomplish this meaning the petitioner invokes the rule of statutory construction that "Whenever it is necessary to effectuate the obvious intention of the legislature, the courts have power to change and will change 'and' to 'or,' and *vice versa.*" 25 Ruling Case Law, section 226, page 977; 36 Cyc. 1123; Lewis' Sutherland Statutory Construction, vol. 2, page 756 (2d), section 397.

The Commission, speaking through Commissioner Fletcher, held that since the various enumerated public services are stated in the disjunctive in the "First" subdivision of the section, this indicates a legislative intent not to permit a combination of these except in the case of the related telegraph and telephone business.

The opinion points out: "The use of the language 'or both' clearly indicates that telegraph and telephone lines might be either separate, as indicated by the word 'or,' or together, as indicated by the words 'or both,' and it would seem to follow, as a necessary conclusion, that, if any other combinations were intended to be authorized, there would have been some addition after the enumeration using the word 'or' to repel the literal and ordinary disjunctive meaning of that word in other respects than as to telegraph and telephone lines, such as 'or a combination of any one or more of the foregoing.' "

At the outset it should be remembered that this appeal comes to us under the express mandate of section

156 (f) of the Constitution of Virginia, "that the action of the Commission appealed from shall be regarded as *prima facie* just, reasonable and correct, * * *." *Garden Club of Virginia* v. *Virginia Public Service Co.,* 153 Va. 659, 674, 151 S. E. 161; *Petersburg, H. & C. P. Ry. Co.* v. *Commonwealth,* 152 Va. 193, 200, 146 S. E. 292, 67 A. L. R. 931. As Judge Prentis said in *Chesapeake & Potomac Telephone Co. of Virginia* v. *Commonwealth of Virginia,* 147 Va. 43, 58, 136 S. E. 575, 579, of the decisions of the State Corporation Commission, "To their findings, then, must be ascribed the respect due to the judgments of a 'tribunal appointed by law and informed by experience.' *Illinois Central R. Co.* v. *Interstate Commerce Commission,* 206 U. S. 441, 27 S. Ct. 700, 51 L. Ed. 1128."

After a careful examination and consideration of the matter, we find nothing to overcome the presumption of the correctness of the Commission's decision. Indeed, our conclusion is that its interpretation of the statute is correct.

It is true that in the construction of statutes, whenever it is necessary to effectuate the obvious intention of the legislature, disjunctive words may be construed as conjunctive, and *vice versa.* But it is likewise well settled that "courts will construe 'or' as 'and,' and *vice versa,* only where from the context or other provisions of the statute, or from former laws relating to the same subject and indicating the policy of the State thereon, such clearly appears to have been the legislative intent." 25 Ruling Case Law, section 226, page 978. As is said in 59 Corpus Juris, section 584, page 986, "When, and only when, necessary to effectuate the obvious intention of the legislature, conjunctive words may be construed as disjunctive, and *vice versa.*"

Applying this rule, we find in the language of the section itself nothing which points to the conclusion that it was the "obvious intention of the legislature" that the word "or" was intended to mean "and." We naturally assume, therefore, that the draftsman intended the word "or" to have its ordinary, literal and disjunctive meaning.

Neither do we find in the history of the statute anything to indicate that it means other than as written. The language of the "First" subdivision of the section has undergone no change since its original adoption by the General Assembly. See Acts of Assembly of 1902-03-04, Chapter 270, subsection 2, pages 437, 445.

If the contention of the petitioner prevails, one corporation could be formed to engage in all forms of public service activities, except that of operating a railroad. A charter could be granted to conduct a telegraph business, a telephone business, an electric light, a heat and power business, a business of distributing natural and artificial gas, a business of supplying water for use by the public in every county, city and town throughout the State.

Undoubtedly it is for the General Assembly and not for the courts to decide whether such power will be given to a corporation. But the legislative intent to grant such power should be clearly and definitely expressed in no uncertain terms. It should not be left to be drawn by the courts from the statute by mere inference.

Certainly we have been pointed to no statute, nor have we been able to find any, which clearly shows any such legislative intent. Aside from section 3865, we find the disjunctive "or" used in dealing with the enumerating public services in sections 3867, 3871, 3883, 4058, 4061 and section 4067, as amended by Acts 1922, Chapter 511.

Again, the different methods of taxing corporations engaged in the various public services negative the idea that the several unrelated services should be conducted by one corporate organization.

The construction placed on the statute by the Commission is supported by the authorities.

In 14 Corpus Juris, page 130, section 121, it is said: "The general rule, however, is that unless expressly permitted, a single corporation can not be formed for two or more of the purposes specified in different statutes or in different subdivisions of the same statute; and that, where

a statute authorizes the formation of corporations for several purposes named in the alternative, particularly where they are separated by the disjunctive 'or,' and requires the charter or articles of incorporation to set forth the purpose of the corporation, a single corporation can not be organized for more than one of such purposes, and charters or articles including more than one must be refused."

Thompson on Corporations (3d Ed.), vol. 1, section 48, says: "The statutes of the various States generally enumerate a large number of definite purposes for which corporations may be organized. These purposes are usually stated in the alternative and are separated by the disjunctive 'or.' Under such statutes the rule is established that a corporation can be organized only for one of the single designated purposes; and that articles of association which include more than one of these specifically and separately stated objects are void."

See also, Fletcher Cyclopedia Corporations, vol. 1, section 117, page 201; *Williams* v. *Citizens' Enterprise Co.,* 25 Ind. App. 351, 57 N. E. 581; *State* v. *Minnesota Thresher Manufacturing Co.,* 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510; *Johnston* v. *Townsend,* 103 Tex. 122, 124 S. W. 417; *Burk* v. *Mead,* 159 Ind. 252, 64 N. E. 880; *Consumers' Gas Trust Co.* v. *Quinby* (C. C. A. 7), 137 Fed. 882.

In *People* v. *Rice,* 138 N. Y. 151, 33 N. E. 846, cited by the petitioner, the corporation was chartered as a gas company under a statute (Laws 1890, Ch. 566, art. 6, sec. 60) which authorized the creation of a corporation "for manufacturing and supplying gas for lighting the streets and public and private buildings, * * * or for manufacturing electricity for producing light, heat or power." By a subsequent act (Laws 1892, Ch. 688), corporations were authorized to so enlarge their powers as to include purposes and powers "of the same general character." Section 32. It was held that the powers of the corporation could, under the Act of 1892, be enlarged by amendment so as to enable it to produce electricity for light and

power, since that business and that of manufacturing and supplying gas for lighting were "of the same general character." That case, therefore, is not helpful on the question here under consideration.

Commissioner Fletcher further says, "A long course of administrative construction from the very inception of section 3865 supports the conclusion which the Commission has reached in this case * * *."

In support of this statement he points out that in 1906, the Commission, speaking through Judge Crump, its then chairman, rendered an opinion refusing to grant to The Public Service Corporation of Virginia articles of association broad enough to include every character of public service, except a railroad, a turnpike or a canal.

And again in 1930, the Commission, speaking through Judge Fletcher, refused to pass the articles of association of Monterey Utilities Association, so drafted as to authorize it to engage in the business of furnishing light, heat and power by electricity and supplying water for use by the public.

These two cases, as well as the one now under consideration, presented the question squarely to the Commission, and in each instance, after a formal hearing, in a carefully considered opinion, the Commission reached the conclusion that one corporation could not be authorized to engage in more than one unrelated public service.

Despite the conclusion reached in these cases, the petitioner contends that the Commission has, on other occasions, placed a contrary administrative construction on section 3865. It refers to several charters and extracts from charters granted by the Commission and incorporated in the record, wherein public service corporations have been authorized to engage in more than one class of business. For instance, it points out that the Richmond & Henrico Railway Company is authorized to operate a street railway and a viaduct; that the Bristol Gas & Electric Company is empowered to sell both gas and electricity for light, heat, fuel and power purposes; that the Virginia

Railway & Power Company is authorized to operate a street railroad, a general electric power and light business, and to operate motor vehicles and buses for transporting passengers; and that the Edmundson Electric Company is authorized to engage in the distribution and sale of electricity for light, heat and power, and the distribution and sale of water.

Since these charters are not before us for review, it is neither necessary nor proper for us to decide whether or not the powers therein granted contravene section 3865. It is obvious that in some cases the services are related. But in no instance cited by the petitioner does it appear that there was any objection to the granting of the articles of association or the passing of the amendments. At most, the instances cited by the petitioner are, as Commissioner Fletcher points out, merely "evidence of clerical departures, if departures they or any of them be, from the well established administrative construction, as evidenced by express rulings in several instances by the Commission * * *." "It is a well known fact that the ordinary routine granting of charters and passing of amendments is clerical," although a formal order is entered in each instance.

Certainly it cannot be seriously argued that the clerical act of the Commission in granting a charter, to which no objection has been raised, has the same persuasive effect as the carefully considered opinion rendered by the Commission in a contested hearing on the subject.

In *Smith* v. *Bryan,* 100 Va. 199, 204, 40 S. E. 652, 654, Judge Whittle said: "So, also, the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the court will adopt that construction."

See also, *Board* v. *Cox,* 155 Va. 687, 706, 156 S. E. 755;

*Ballard* v. *Commonwealth,* 156 Va. 980, 998, 159 S. E. 222; *Smith* v. *Kelley,* 162 Va. 645, 652, 174 S. E. 842.

And as Judge Kelly said in *City of Richmond* v. *Drewry-Hughes Co.,* 122 Va. 178, 193, 90 S. E. 635, 94 S. E. 989, 992: "* * * if it be conceded that the question is a doubtful one, then we should give due weight to the interpretation placed upon these statutes by that branch of the executive department of the State which is specially charged with the duty of construing and effectuating their provisions."

Nearly thirty years have elapsed since Judge Crump, speaking for the Commission, laid down the principle later followed by Judge Fletcher. At none of the intervening sessions of the General Assembly has there been any legislative change in the interpretation placed on the statute. The revisors of the Code, in 1919, suggested none. While the General Assembly of 1928 amended the section by adding thereto a new subsection "Second," dealing with motor propelled vehicles as common carriers, it made no change in the language of the "First" subsection now under review. Acts of Assembly, 1928, Ch. 171, pages 603, 604.

Granting that the meaning of section 3865 is doubtful, to give it the construction contended for by petitioner would result in our changing by implication the interpretation placed on it by the Commission over a long period. It would also result in our going counter to the constitutional mandate of the presumption of the correctness of the Commission's decision in this case. Certainly we have been given no reason why this should be done.

In the view we take of the matter, that petitioner's charter cannot be amended so as to permit it to perform the several desired public services, it is unnecessary for us to discuss whether or not the proposed amendment complies, in other respects, with the provisions of subsections (b), (c), and (d) of section 3865.

Our conclusion is that the order of the Corporation Commission is right and should be affirmed.

*Affirmed.*