**HERRIN TRANSP. CO., Inc. et al. v.
UNITED STATES et al.**
Civ. A. No. 3257.

United States District Court
E. D. Louisiana, New Orleans Division.
Sept. 15, 1952.

Judgment Affirmed Feb. 2, 1953.
See 73 S.Ct. 497.

90

Ainsworth & Ainsworth, Jones, Flanders, Waechter & Walker, O'Neill & O'Neill, New Orleans, La., Allan Watkins, Atlanta, Ga., Robert L. Garrett, Shreveport, La., Dudley W. Conner, Hattiesburg, Miss., for plaintiffs.

John N. McKay, U. S. Atty., New Orleans, La., Francis A. Ledet, Asst. U. S. Atty., New Orleans, La., Daniel W. Knowlton, with Interstate Commerce Commission, Washington, D. C., for defendants.

Before BORAH, Circuit Judge, CHRISTENBERRY, Chief Judge, and WRIGHT, District Judge.

CHRISTENBERRY, Chief Judge.

In this suit, plaintiffs seek to vacate and set aside an order of the Interstate Commerce Commission dated September 27, 1951, denying the application of the plaintiffs to transfer to Herrin Transportation Co. Inc., Robert T. Herrin party in control, certificates of public convenience and necessity theretofore issued to Mobile Express, Inc., in I. C. C. Docket Numbers MC-29906 and MC-29906-Sub. No. 1, authorizing said corporation to operate as an interstate common carrier by motor vehicle. The application of plaintiffs was filed on April 1, 1949, under Section 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5, with defendant Interstate Commerce Commission, hereinafter referred to as "The Commission", in said Commission's Docket No. MC-F-4130.

The Commission assigned the application for hearing at New Orleans, before its Examiner Philip M. Crowley, and such hearing was held on May 6, 1949. The Examiner's report and recommended order,

recommending denial of the application, were issued on August 3, 1949.

Within the delays provided by law, applicants filed exceptions to the Commissioner's findings and recommended order, and, in the alternative, requested that the case be re-opened for further hearing. The alternative request for further hearing was granted by Division 4 of the Commission, and said hearing was held during several days, beginning April 11, 1950, at New Orleans, before Examiner Francis A. Clifford.

Examiners Clifford and Hobart C. Clough, after this further hearing, issued a report and recommended order recommending denial of the application. Within the legal delays, the applicants filed exceptions to the report and order recommended by the Examiners, and on March 7, 1951, Division 4 of the Commission reversed the Examiners' report, and decided in favor of the plaintiffs, authorizing the transfer of the certificates.

Petitions for reconsideration were then filed by protesting carriers, and the matter then came before the entire Interstate Commerce Commission for decision.

On September 27, 1951, the entire Commission issued its final order, reversing the Division 4 decision, and denying the application for transfer. On November 20, 1951, plaintiff brought this suit to set aside the Commission's order.

Jurisdiction of this Court is invoked under the provisions of Title 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321–2325; Title 49 U.S.C.A. §§ 17(7) and 305(g); and Title 5 U.S.C.A. §§ 1001–1009.

The plaintiffs charge that the Commission's order denying plaintiffs' application is illegal, because:

(1) The Commission exceeded its statutory authority.

(2) The order is based upon an improper interpretation of the Interstate Commerce Act.

(3) The order has no evidence supporting it, and is contrary to the evidence.

(4) The Commission erred in making and in failing to make certain specified findings.

Six motor carriers who were protestants in the Commission's hearings and proceedings intervened in this suit and filed their answer.

Mobile Express, Inc., hereinafter referred to as Mobile, was issued a certificate by the Interstate Commerce Commission, dated December 6, 1940, numbered MC-29906, authorizing said corporation to carry on motor freight common carrier operations in interstate commerce, transporting general commodities over U. S. Highway 90 between New Orleans, Louisiana, and Mobile, Alabama, serving all intermediate points except those in Louisiana. On September 22, 1941, the Commission extended this authority to the off-route points of Logtown, Waveland, Clermont Harbor, Lakeshore, Kiln, Pine Hill, Fenton, DeLisle and Henderson Point, Mississippi, points within 10 miles of Mobile, and within 10 miles of New Orleans and Slidell, Louisiana, except traffic between New Orleans and Slidell. Mobile operated under these certificates until December 17, 1946, when it voluntarily ceased operating. Mobile did not operate from December 17, 1946 to April 10, 1947. On December 20, 1946, Mobile filed a request with the Commission, seeking authority to suspend its operations, which request was denied. Mobile then sought authority to lease its operating rights to one Lewis Bobo for a period of 99 years. The Commission, on April 10, 1947, approved the lease for a period of 14 years. Mobile had disposed of its equipment, and the lease to Bobo was of operating rights only. Bobo failed to pay the rental called for under the lease, and on February 24, 1948, Mobile notified him that the lease was concelled for non-payment of rent. On March 10, 1948, Bobo ceased operating, and no operations under Mobile's certificates have been conducted since that date. On March 15, 1948, Bobo filed a voluntary petition in bankruptcy. On March 29, 1948, after having failed to get Bobo to sign a joint petition seeking cancellation of the lease authority, Mobile filed with the Commission a request that the lease authority be cancelled. That request was denied by the Commission by order dated June 25, 1948.

On July 16, 1948, Mobile, in a petition filed in the United States District Court for the Southern District of Alabama, sought an order holding that the trustee in bankruptcy had no further interest in the lease. That petition was denied by the Court on March 9, 1949. During the pendency of the petition in the United States District Court for the Southern District of Alabama, that is to say on December 13, 1948, Mobile filed a petition with the Commission seeking authority to suspend operations until the matter pending before the District Court could be concluded. The Commission denied that petition by order dated February 18, 1949, but changed its records to show Mobile as the holder of the operating authority.

On April 1, 1949, by joint application filed with the Commission, Herrin and Mobile sought authority under Section 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5, for purchase by the former of operating rights of the latter. No other party was involved. The purchase price of $13,750 was placed in escrow with Mobile's controlling stockholder, one Walter J. Gex, and was payable to Mobile regardless of whether the Commission approved or denied the application.

At the Commission's first hearing on the application, eight motor carriers intervened in opposition to the application, and introduced evidence. At that hearing, plaintiffs did not attempt to prove public convenience and necessity, but relied upon the existing authority. They contended that the operating authority could be sold, claiming that there was no abandonment or discontinuance of operations by Mobile that would prevent the sale. The Examiner found that there was an abandonment or discontinuance of operations. The recommendation of the Examiner that the application be denied was on the grounds as follows:

"* * * to permit vendee to institute the service authorized by vendor's certificate in this highly competitive area would have the effect of imposing a penalty on intervenors for increasing their facilities to meet the needs of the shipping public between New Orleans and Mobile from 1946 on, and at a time when available traffic is diminishing. The Examiner is of the opinion that in the absence of a showing that there is need for the new competitive service proposed by vendee, such additional service would not foster sound economic conditions in transportation in the area involved."

In their alternative petition for further hearing, plaintiffs alleged a public convenience and necessity for the operation existed, and that they would prove such if the Commission would grant a further hearing.

At the second hearing, held by a different Examiner of the Commission, 20 shippers and consignees, and 3 of Herrin's connecting line motor carriers in Texas, testified in support of the application. The plaintiffs endeavored to establish public convenience and necessity for the additional service proposed by Herrin. Fifteen shipper witnesses testified, some by stipulation, in support of the protestants.

In their report, recommending that the application be denied, the Examiners concluded:

"* * * Such benefits as shippers might receive from the proposed single-line service, standing alone, are not sufficient to warrant approval of the transaction. The record shows that the revenue which the intervenors derive from handling interline shipments is essential to their operations. The diversion of a substantial amount of this traffic to vendee would no doubt impair their ability to continue their present service. The evidence adduced by shippers supporting the application indicates a preference for the proposed through service more than it shows a real need for that service. Considering all the circumstances involved we are of the opinion that the proposed transaction would not be consistent with the public interest."

Thereafter, Division 4 of the Commission in deciding in favor of plaintiffs, notwithstanding the report and recommended

order of the Examiners, concluded that a need had been shown for the additional service by vendee in the territory between New Orleans and Mobile, and that the granting of the application for transfer would be consistent with the public service. Subsequently, as has been said, the entire Commission, by majority vote, denied plaintiffs' application, and in doing so gave the following reasons for its action:

"Upon reconsideration of the evidence in the light of petitioners' contentions, we are of the opinion that the prior report gave undue weight to the desire of shippers and consignees for the proposed single-line service; that this sole consideration, in view of the existing services of numerous carriers in the territory between New Orleans and Mobile, does not warrant revival of the dormant operating rights; that no need has been shown for the additional service by vendee in that territory; and that the disadvantages which would result from approval of the transaction outweigh the possible benefits."

The question here is not whether the proposed purchase by Herrin of Mobile's operating rights is consistent with the public interest. That is an administrative question peculiarly within the province of the Commission to decide, and it is not for this Court to substitute its judgment for that of the Commission.

Section 5(2)(a) of the Interstate Commerce Act, 49 U.S.C.A. § 5(2)(a) provides in part as follows:

"It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b)—

"(i) * * * for any carrier * * to purchase * * * the properties, or any part thereof, of another; * *."

Section 5(2)(b) provides in part:

"Whenever a transaction is proposed under subparagraph (a), the carrier or carriers or person seeking authority therefor shall present an application to the Commission, * * *. If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subparagraph (a) and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable * * *",

and Section 5(2)(c) provides as follows:

"In passing upon any proposed transaction under the provisions of this paragraph (2), the Commission shall give weight to the following considerations, among others: (1) The effect of the proposed transaction upon adequate transportation service to the public; (2) the effect upon the public interest of the inclusion, or failure to include, other railroads in the territory involved in the proposed transaction; (3) the total fixed charges resulting from the proposed transaction; and (4) the interest of the carrier employees affected."

From the above quoted provisions of Section 5 of the Act, it is clear that the Commission had the statutory authority to make the order of which plaintiffs complain. This being true, the only issue remaining to be decided is whether the Commission's order has a rational basis in adequate findings which in turn are supported by substantial evidence, or whether the Commission acted arbitrarily and capriciously in disapproving the acquisition by Herrin of the operating rights of Mobile.

It is settled law that if the order of the Commission lies within the scope of the statute, and is based upon adequate findings that are supported by substantial evidence, the order is entitled to finality, and may not be set aside, modified or disturbed by this Court.

In the case of Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 111, 56 L.Ed. 308, in discussing the limitation upon the right of courts to review orders of the Commission, the Court said:

"In determining these mixed questions of law and fact, the court confines itself to the ultimate question as to whether the Commission acted within its power. It will not consider the expediency or wisdom of the order, or whether, on like testimony, it would have made a similar ruling. 'The findings of the Commission are made by law prima facie true, and this court has ascribed to them the strength due to the judgments of a tribunal appointed by law and informed by experience.' Ill. Cent. v. I. C. C., 206 U.S. 441, 27 S.Ct. 700, 51 L.Ed. 1128. Its conclusion, of course, is subject to review, but, when supported by evidence, is accepted as final; not that its decision, involving, as it does, so many and such vast public interests, can be supported by a mere scintilla of proof, but the courts will not examine the facts further than to determine whether there was substantial evidence to sustain the order."

In Mississippi Valley Barge Co. v. U. S., 292 U.S. 282, 54 S.Ct. 692, 694, 695, 78 L.Ed. 1260, the Court said:

"The structure of a rate schedule calls in peculiar measure for the use of that enlightened judgment which the commission by training and experience is qualified to form. Fla. v. U. S., 292 U.S. 1, 54 S.Ct. 603, 78 L.Ed. 1077. It is not the province of a court to absorb this function to itself. (Cases cited.) The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."

It is true that those cases involved the rate-making power of the Commission, but the rule stated is equally applicable to all orders of the Commission.

In McLean Trucking Co. v. U. S., 321 U.S. 67, 64 S.Ct. 370, 381, 88 L.Ed. 544, an order of the Commission authorizing the consolidation of several motor carriers under Section 5(2) of the Act was approved by the Supreme Court, and the Court said:

"* * * Resolving these considerations is a complex task which re-

quires extensive facilities, expert judgment and considerable knowledge of the transportation industry. Congress left that task to the Commission 'to the end that the wisdom and experience of that Commission may be used not only in connection with this form of transportation, but in the coordination of all other forms.' 79 Cong.Rec. 12207. 'The wisdom and experience of that commission,' not of the courts, must determine whether the proposed consolidation is 'consistent with the public interest.' (Citing cases). If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order."

In this case, the Commission was required by the Statute to make two basic findings: (1) that the proposed transaction is within the scope of Section 5(2)(a) of the Statute, and (2) that the proposed transaction would or would not be consistent with the public interest. These findings were made by the Commission. To determine whether the Commission's findings are supported by substantial evidence, the record must be considered as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. This we have done. To review the evidence here in detail would serve no useful purpose. We think it is sufficient to say that from such examination it is clear that the ultimate finding that the proposed transaction would not be consistent with the public interest has a rational basis in the subsidiary findings which are supported by substantial evidence.

The Commission was confronted on the one hand with the problem of the probable effect of the proposed transaction upon existing transportation facilities, and on the other hand the question of whether there was need for the new service proposed by Herrin. Evidence was adduced by proponents and opponents of the proposed transaction, and it is plain from the record that the problem of the Commission was

chiefly one of weighing evidence in the light of the national transportation policy, and of Section 5 of the Act. The weighing of the evidence is a function reposed by the Act in the Commission. It is a function particularly calling for the exercise of the wisdom, experience and expert judgment of the Commission.

The order complained of has a rational basis in the adequate findings, which findings are supported by substantial evidence, and the Commission did not act arbitrarily, capriciously, or unlawfully.

The complaint is, accordingly, dismissed, at plaintiffs' cost.