SITES FREIGHTLINES, Inc., Inland Motor Freight, Inc., and Consolidated Freightways, Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant (Interstate Commerce Commission, Maskelyne Transfer and Storage, Inc., and Union Pacific Railroad Co., a corporation, Intervening Defendants).

No. 8808.

United States District Court
D. Oregon.

Jan. 24, 1958.

# 910

John M. Hickson and William B. Adams, Portland, Or., for plaintiffs.

C. E. Luckey, U. S. Dist. Atty., Portland, Or., Victor R. Hansen, Asst. Atty. Gen., for United States.

B. Franklin Taylor, Jr., Washington, D. C., for Interstate Commerce Commission.

Before FEE, Circuit Judge, and MATHES and EAST, District Judges.

EAST, District Judge.

The parties to this action seek to review and perpetually enjoin the Interstate Commerce Commission (Commission) from issuing its Certificate of Convenience and Public Necessity and otherwise effectuate its Decisions and Orders of March 23rd, 1956 as affirmed on August 13, 1956, in the proceedings entitled "Maskelyne Transfer and Storage, Inc.,—Extension—Motor-For-Rail Service, Docket MC 20080, Sub. 1."

### Jurisdiction.

Jurisdiction of this three-judge court[1] is invoked under the provisions of Title 28 U.S.C. §§ 1336, 1398, 2321–2325, 2284 and Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9); Section 10 of the Administrative Procedure Act, Section 1009, Title 5 U.S.C.A.

### Parties.

The plaintiff Sites Freightlines, Inc., (Sites) a corporation of the State of Oregon, and Inland Motor Freight, Inc., (Inland) is a corporation of the State of Washington with its principal offices located at Spokane, Washington, and Consolidated Freightways, Inc., (Consolidated), is a corporation of the State of Washington, with its principal offices in Portland, Oregon, and each of the said plaintiffs are common carriers by Motor vehicle under certificates issued by Commission.

The intervening defendant Commission is a party to this action pursuant to Section 2323, Title 28 U.S.C. Intervening defendant Maskelyne Transfer and Storage, Inc. (Maskelyne) is a corporation of the State of Washington and as a common carrier operates in interstate commerce in the states of Washington, Idaho and Oregon and intrastate commerce in the State of Washington.

Intervening defendant Union Pacific Railroad Co. (U. P.) is a corporation and a common carrier by railroad engaged in interstate commerce and intrastate commerce in and through the state of Washington and several other states in the union.

Each of said defendants were allowed to intervene in this matter pursuant to Section 2323, Title 28 U.S.C.

### Procedure Before the Commission.
Maskelyne

"—made application to the (Interstate Commerce) Commission for authority to operate as a common carrier by motor vehicle of general commodities, with certain exceptions not here important, (1) between Walla Walla, Washington, and Pomeroy, Washington, over U. S. Highway 410, serving certain named intermediate and off-route points, and (2) between Walla Walla, Washington, and Pendleton, Oregon, over a designated route, serving certain named intermediate points."

---

1. Application for a Restraining Order in the above entitled action was made to District Judge William G. East of the District of Oregon. Thereafter upon the request of Judge East this three judge case consisting of Circuit Judge James Alger Fee, Ninth Circuit, District Judge William E. Mathes of the Southern District of California and District Judge William G. East, of the District of Oregon was convened.

all subject to conditions which in effect limit its service as auxiliary to, or supplemental of, the rail service of U. P.

"The application was supported by the Union Pacific Railroad Company and was opposed by these plaintiffs.

"Two of the plaintiffs can operate as a common carrier by motor vehicle over all of the routes covered by the application. The third, Sites, is authorized only to operate over a portion of the applied-for routes.

"The applicant, the Union Pacific, and each of these plaintiffs presented evidence at the hearing in support of their respective positions. No shipper or receiver of freight testified.

"The Joint Board recommended that the requested authority be granted subject to substantially the same conditions included in the application.

"Plaintiffs, here, filed exceptions to the Joint Board's recommended order, Division 1, of the Commission in acting upon the exceptions on March 23, 1956, issued an order providing for granting of the application, subject to the following conditions:

"1. The service performed by applicant shall be limited to service which is auxiliary to, or supplemental of, rail service of the Union Pacific Railroad Company, hereinafter called the railroad;

"2. No service shall be rendered to or from any point not a station on the rail lines of the railroad.

"3. Shipments transported shall be limited to those which are received from, or delivered to, the railroad under a through bill of lading covering, in addition to a motor carrier movement by applicant, a prior or subsequent movement by rail;

"4. All contractual arrangements between applicant and the railroad shall be reported to the Commission and shall be subject to revision by it if and as it may be found necessary in order that such arrangement shall be fair and equitable to the parties; and

"5. Such further conditions, as the Commission, in the future may find it necessary to impose to restrict applicant's operation to service which is auxiliary to, or supplemental of, the rail service of the railroad."

"Division 1 also found that the applicant was fit, willing and able to perform the proposed services.

"Plaintiffs then filed a petition for reconsideration, which was denied August 13th, 1956."

Relief Sought by Plaintiffs.

The plaintiffs seek in this action a decree adjudging the Commission's Orders, dated March 23, 1956 and August 13, 1956, to be beyond the lawful authority of the Commission and to be wholly unlawful and void. Upon motion of the plaintiffs, and by an ex-parte Temporary Restraining Order per East, Judge, dated September 12, 1956, the aforesaid two Orders of the Commission were stayed pending hearing for an Interlocutory Injunction. By an agreement of all parties the aforesaid Temporary Restraining Order stands in effect pendente lite.

The Issues.

All of the defendants have made issue on the merits and the controverted contentions of the plaintiffs are:

"1. That the service proposed by the applicant is not that of a 'common carrier by motor vehicle' [2]

---

2. Section 307(a), Title 49 U.S.C.A., inter alia, provides:

"'(a) Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that

and therefore a certificate authorizing the proposed service cannot properly issue; and

"2. That there is no evidence of record upon which the Commission could properly predicate a finding that public convenience and necessity require the proposed operation,[3] and

"3. That there is no evidence of record upon which the Commission could properly predicate a finding that the applicant is fit, willing and able to conduct the proposed operation.[4]

"4. That the Commission's Orders are contrary to the National Transportation Policy." [5]

## On the Merits.

In resolving the issues presented it is not our function to review the Commission for mere error, nor were we authorized to review its Findings even though, if original finders of fact we might have reached a different conclusion on the evidence. It is settled law that if the Commission has:

1. Acted within the scope of its statutory authority,

2. Has not arbitrarily or capriciously abused its discretion and has proceeded in accordance with the essential requirements of due process,

3. Has acted upon adequate findings, and

4. Whether in the record considered as a whole there is substantial evidence and a rational basis to support those Findings,

then the Orders of the Commission are entitled to finality and may not be set aside, modified or disturbed by this Court.[6]

Issue No. 1:

We find that from

"—the inception of its regulation of motor carriers, the Commission has authorized substituted motor-for-rail service, viewing it as a separate and distinct type of motor carrier operation. In the first important motor-for-rail case, Pennsylvania Truck Lines, Inc.—Control—Barker, 1 M.C.C. 101 (1936), 5 M. C.C. 9, 5 M.C.C. 49 (1937), the Commission said (1 M.C.C. at 111):

" ' * * * The motor vehicle can undoubtedly be used as a very valu-

---

the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: * * ' "

3. Division I of the Commission recited in its Order of March 23, 1956:
" ' * * * Although no shipper testimony was presented, the evidence clearly shows that the operation here involved will result in operating economies as well as a better, more frequent and efficient service to the public and, therefore, we are of the opinion that this type of co-ordinated service is distinctly in the public interest. If appropriately restricted, the proposed operation should have no material adverse effect on the operations of the opposing motor carriers.' "

4. Section 307, Title 49 U.S.C.A.
—declares the "policy of the Congress 'to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize

and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; * * * ' " 49 U.S.C.A. note preceding section 301.

5. Section 1, Title 49 U.S.C.A.
"provides that an applicant must establish that it is fit, willing and able to perform the proposed service."

6. See Herrin Transportation Co. v. United States, 108 F.Supp. 89, page 93, affirmed 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712, rehearing denied 345 U.S. 914, 73 S.Ct. 643, 97 L.Ed. 1348; and Florida Citrus Commission v. United States, D.C., 114 F.Supp. 420. Administrative Procedure Act in Section 1009(e), Title 5 U.S.C.A.; I. C. C. v. Union Pacific R. R. Co., 222 United States 541, pages 547–548, 32 S.Ct. 108, 56 L.Ed. 308; Mississippi Valley Barge Line v. U. S., 292 U.S. 282, 52 S.Ct. 692, 78 L.Ed. 1260.

able auxiliary or adjunct to railroad service, particularly less-than-carload service, and many opportunities for such use here have been pointed out of record and are clear. Such coordination of rail and motor vehicle operations should be encouraged. The result will be a new form of service which should prove of much public advantage. Nor do we believe that the creation of this new form of service will "unduly restrain competition." On the contrary, it should have the opposite effect.'

"In Kansas City Southern Transport Co., Inc., Common Carrier Application, 10 M.C.C. 221 (1938) and 28 M.C.C. 5 (1941), the general question of the extent to which substituted motor-for-rail service should be authorized was considered. There the Commission approved the issuance of a certificate as a common carrier by motor vehicle to a railroad-controlled motor carrier and said (10 M.C.C. at 235);

" ' * * * Moreover, it is clear that the coordinated rail-motor service will be a new form of service, utilizing both forms of transportation to advantage, and differing from the service given by the railway alone or by competing **motor** carriers alone * * *

" 'Further, that the Commission has consistently recognized that the motor vehicle can be used to supplement rail service in the interest of affording better service to the public, and that Congress intentionally left the door open so that coordinated rail-motor service could be used with Commission approval.[7] This interpretation of the congressional intent has been judicially af-

firmed and is no longer subject to serious question. For example, in Interstate Commerce Commission v. Parker, 326 U.S. 60 [65 S.Ct. 1490, 89 L.Ed. 205], the Court said:

" 'When Congress directed that the act should be administered to preserve the inherent advantages of each mode of transportation, it is abundantly clear that it was not intended to bar railroads from the operation of off-the-rail motor vehicles. * * * ([326 U.S. at page 66, 65 S.Ct. at page 1493])

" ' * * * The alternative to the existence of this discretion (to conclude that the supplemental service may be better rendered by a motor carrier affiliate of the railroad than by use of available motor carriers) is that the language of the Interstate Commerce Act, part II, forbids the granting to railroads of a certificate of convenience and necessity for the operation of motor trucks, under specially limited certificates, when there are certificated motor carriers, independent of railroad authority or supervision, with whom arrangements for the service might be made by the rail carriers. Any such implication is negated by the discretion to grant certificates conferred on the Commission by the Act. ([326 U.S. at page 73, 65 S.Ct. at page 1496])' "

■■ It appears that in many of the cases referred to the Commission's Certificate of Public Convenience and Necessity was issued to motor carrier subsidiaries of railroads. So, clearly, argues the Commission and we agree

"—if a certificate, properly limited, may be granted to a wholly-owned motor carrier subsidiary of a rail-

---

**7.** "As the Court pointed out in United States v. Rock Island Motor Transit Co., 340 U.S. 419 at p[age] 432, footnote 10 [71 S.Ct. 382, 95 L.Ed. 391], the Commission listed 120 cases in its brief in United States v. Texas & Pacific Motor Transport Co., 340 U.S. 450 [71 S.Ct. 422, 95 L.Ed. 409], which had been decided by the Commission, dealing with

the issuance of certificates for motor carrier service supplemental to rail service.

"For a brief summary of the legislative and administrative background, see United States v. Rock Island Motor Transit Co., supra [340 U.S. at] p[ages] 430–432 [71 S.Ct. at page 389]."

road (as it was, for example, to the Willett Company in the Parker case), it may be granted to an independent trucker, as Maskelyne here, with whom the railroad contracts for the supplemental service. Citing Alto Trucking Co., Extension, 44 M.C.C. 755; Columbia Motor Transport Co., Common Carrier Application, 46 M.C.C. 69, George Ernst, Jr., Inc., Exension, 52 M.C.C. 157."

It is manifest from a reading of the Commission's Order of March 23, 1956, that Maskelyne Motor Carrier Services by reason of the limiting restrictions dictated by the Commission would be confined to operations being auxiliary and supplemental to rail service by U. P.

"It is undisputed that Maskelyne is an independent common carrier by motor vehicle currently operating in interstate commerce under authority of a certificate issued March 24, 1955. By its application in this proceeding, it sought authority to extend its operations in order to render trucking service auxiliary or supplemental to the rail. service of the Union Pacific Rail-Road between certain designated stations served by the Railroad. The proposed substituted motor-for-rail service would constitute an extension (Tr. 91–92) of the trailer service which is presently available to shippers served by the Union Pacific Railroad over 3000 of its 9000 miles (Tr. 65–67, 90–92; Ex. 8). The existing substituted service is provided by motor carriers under contracts with the Railroad (Tr. 67) which are identi-

cal in their general conditions to the contract which Maskelyne proposes to execute with the Railroad (Tr. 112).

"Under the proposed arrangement, Maskelyne would use its own equipment which would at all times be under its control (Tr. 15–16, 36–37, 49, 110–111); the drivers are employees of Maskelyne under its exclusive direction and control, Maskelyne having the sole authority to hire or discharge them (Tr. 16, 36–37, 110–111); and the equipment, with or without drivers, would not be leased to the railroad (Tr. 49). In return, Maskelyne would be compensated at a rate per 100 pounds of freight transported. (Tr. 47–48, 110–111). Maskelyne is responsible to the general public for the operation of its vehicles, carrying public liability and property damage insurance (Tr. 14). It also files all reports required by the Interstate Commerce Commission, the Oregon Public Utilities Commission, and the Washington Public Service Commission and will continue to do so (Tr. 14). Finally, by the filing of concurrences, Maskelyne would be made a party to the tariff covering the proposed service. (Tr. 117–118)."

Therefore we conclude that the Commission in issuing its challenged Orders acted within the scope of its statutory authority without the abuse of its discretion.[8]

A very illustrative and similar case is Columbia Motor Transport Co., Common Carrier Application, 46 M.C.C. 69.[9]

---

8. See American Trucking Asso. Inc. et al. v. U. S., et al.—U.S. (decided Dec. 9, 1957, where the commission's Order issued an unrestricted Certificate of Public Convenience of Necessity to a wholly owned railroad subsidiary motor carrier was upheld.).

9. The Commission noted (pp. 72–73):
"'Under the proposed plan of operation, the railroad alone would deal with the shippers and consignees and would assume responsibility for the freight throughout the entire movement. It

would issue bills of lading, collect all charges, adjust claims, solicit traffic, and deal with the shipping public. The railroad would, at its option, substitute truck service for rail service between stations on its lines and charge the same rates as if the shipment moved wholly by rail. In such instances, the shipper would not know whether his shipment would move by rail or by motor vehicle but would know that rail rates would be charged. Applicant would have no relations with the shipping public except, as just indicated, at nonagency points.

Further the record supports these further Findings of the Commission wherein the Commission considered and rejected the contention that Columbia did not qualify as a common carrier, as follows:

" 'Certain motor-carrier protestants question the proposed plan under which applicant would perform substituted service for the railroad. They contend that applicant does not qualify as a common carrier by motor vehicle under the act and hence, that it may not be granted a certificate. Some of these protestants believe that it may be an instrumentality of the railroad, or, at most, a contract carrier by motor vehicle. In support of their position, protestants refer to the decision of the United States Supreme Court in Thomson v. United States, 321 U.S. 19 [64 S.Ct. 392, 88 L.Ed. 513], hereafter called the Thomson case, and our findings in Herrin Motor Lines, Inc., Common Carrier Application, 32 M.C.C. 377.

" 'The conclusions reached in the cited cases were based on the particular facts there presented, and while those facts are comparable in some respects to those described herein, it does not necessarily follow that a similar conclusion is warranted in the instant proceeding. The facts herein are more fully comparable with those considered in Alto Trucking Co., Inc., Extension—New Jersey, 44 M.C.C. 755. There we discussed at length the question whether the certificate should be issued to the rail carrier or to the motor-vehicle operator and concluded that

It would serve the railroad exclusively under a written contract covering all routes and would serve no one else. Applicant would conduct motor-vehicle operations between the points, over the routes, and on regular schedules as specified and required by the railroad. Applicant would furnish and operate the motor vehicles and hire and supervise the drivers. At the time of the hearing no determination had been made as

it should be issued to the latter. What was said in that discussion is equally applicable here and leads to a like conclusion. The determination of whether the rail carrier or the motor-vehicle operator should be granted a certificate depends upon which one exercises direction and control of the motor-vehicle operations and assumes full responsibility therefor both to the shippers and the general public. In the instant proceeding, applicant is willing to assume whatever burdens of control and responsibility are required of a motor common carrier seeking to perform the proposed service and the railroad desires that it do so. These burdens serve to identify the party which is willing to assume the responsibilities of a motor common carrier and which, therefore, should receive the certificate. These responsibilities cannot be shifted lightly from one party to the other as all requirements applicable to a motor common carrier must be met before a certificate will be issued. Since applicant has signified its intention and willingness to comply with these requirements, we conclude that in the performance of the proposed service it would be a motor common carrier. Compare Willett Co., Extension—Gary, Ind.—Chicago, Ill., 46 M.C.C. 3' "

Issue No. 2:

The Commission based upon its special knowledge and expertise found from the facts before it that faster service to U. P.'s customers would be obtained by the auxiliary and supplemental service contemplated by Maskelyne; further that

to whether the vehicles would display the name of applicant or the railroad. Applicant would assume responsibility for compliance with the provisions of the act respecting insurance, hours of service of the drivers, safety of operation, and all other requirements applicable to a common carrier by motor vehicle.' " See, also, George Ernst, Jr., Inc., Extensions, 52 M.C.C. 157.

the proposed service would eliminate many expensive rail service switching movements and reached the opinion

> " '—that the benefits to be derived from the proposed operation outweigh any adverse effect on existing carriers and that the proposed service, to the extent authorized herein, is required by the public convenience and necessity. (Id. 584–585).' "

The foregoing opinion is supported by substantial evidence in the record, furthermore the record supports the further Findings of the Commission

> "—'that the operation here involved will result in operating economies as well as better, more frequent, and efficient service to the public and, therefore, * * * is distinctly in the public interest,' and that 'the proposed operation should have no material adverse effect on the operations of the opposing motor carriers' (Id. pp. 584–585), and clearly show a rational basis for the granting of the authority here involved."

Issue No. 3:

The Commission's Findings that applicant Maskelyne

> " '* * * is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and our rules and regulations thereunder; that a certificate authorizing such operations should be granted; and that the application in all other respects should be denied. (Id. 586).' "

is based on evidence as follows: A profit and loss statement for the period from January 1 to July 31, 1955 (Ex. 4); a balance sheet for the month of July 1955 (Ex. 5); a description of its available equipment (Ex. 6); testimony with respect to those exhibits; and a de-

scription and list of its employees (Tr. pp. 12–16).

Issue No. 4:

The foregoing conclusion disposes of this issue.

> "On this record, we think it is apparent that there is a substantial basis for the Commission's conclusion that the proposal was for an improvement in an existing service and was not a new service, and that, within the teachings of the decisions, particularly of the Parker case, supra, the grant of the certificate was fully sustained." [10]

Accordingly we conclude that the Temporary Injunction Order heretofore issued herein should be dissolved and that the Petition of plaintiffs and this cause should be dismissed.

---

10. Quoted from the opinion of Hon. Joseph Hutchenson, Jr., Chief Judge, Fifth Circuit, entered in the three judge case of Central Freight Lines, Inc. v. United States, I.C.C., et al., Civil Action No. 1642, U. S. District Court for the Western District of Texas, Waco Division. This case extends the Orders of the Commission issued in Columbia Motor Transport Co. Inc., Extension, supra.