A. W. SCHAFFER, d/b/a Schaffer Transportation Company,

and

American Trucking Associations, Inc., Plaintiffs,

v.

UNITED STATES of America

and

Interstate Commerce Commission, Defendants.

Civ. No. 624.

United States District Court
D. South Dakota, N. D.
March 22, 1956.

Donald A. Morken, Minneapolis, Minn. (R. G. May, Sioux Falls, S. D., with him on the brief), for plaintiff A. W. Schaffer.

Peter T. Beardsley, Fritz R. Kahn, Washington, D. C., for American Trucking Associations, Inc.

H. Neil Garson and Robert W. Ginnane, Washington, D. C., for Interstate Commerce Commission.

James E. Kilday and Edward Knuff, Washington, D. C. (Stanley N. Barnes, Asst. Atty. Gen., and Clinton G. Richards, U. S. Atty., Sioux Falls, S. D., with them on the brief), for the United States.

Robert J. Bernard, Chicago, Ill., and H. F. Chapman, Sioux Falls, S. D., R. W. Cronon, St. Paul, Minn., Joseph H. Hays, Chicago, Ill., and Carl Helmetag, Jr., Philadelphia, Pa., James G. Lane, Boston, Mass., Amos N. Mathews and James W. Nisbet, Chicago, Ill., for Intervening Railroads.

Before VOGEL, Circuit Judge, and MICKELSON and DEVITT, District Judges.

MICKELSON, Chief Judge.

This statutory three-judge court action was brought by the plaintiffs to set aside the report and order of the Interstate Commerce Commission pursuant to Sec. 205(g) of the Interstate Commerce Act, 49 U.S.C.A. § 305(g), Sec. 10, of the Administrative Procedure Act, 5 U.S.C.A. § 1009 and Secs. 1336, 1398, 2284, 2321 to 2325, of the Judicial Code, 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, incl. That report and order was entered by the Commission in Docket No. MC–93529 (Sub. No. 2), A. W. Schaffer Extension—Granite.

The applicant, A. W. Schaffer, d/b/a Schaffer Transportation Company, sought authority to operate as a common carrier by motor vehicle in interstate or foreign commerce, over irregular routes, in the transportation of granite, manufactured and rough:

(1) From points in Grant County, South Dakota, to points in West Virginia, Maryland, Connecticut, Massachusetts, Vermont, Texas, Arkansas, Louisi-

ana, Wyoming, North Dakota and the District of Columbia;

(2) From points in Vermont to points in South Dakota, Minnesota, North Dakota, Montana, Wyoming, Colorado, Wisconsin, Illinois, Missouri, Iowa, Nebraska, Kansas, Oklahoma, Arkansas, Texas and Louisiana.

The original hearing on the application before an examiner for the Commission was held June 13, 1952. Prior to the issuance of the examiner's recommended report and order, applicant petitioned for a further hearing. By order dated September 9, 1952, the matter was re-opened for further hearing, which was held on December 2, 1952, before the same examiner. Protests against the application were filed by rail carriers in New England territory on June 14, 1951; by Texas Railroad Association and Class 1 Rail Carriers in Southwestern Line territory on June 18, 1951; and by Trunk Line Central territory railroads, except the C. & O. Ry. Co., on July 9, 1951. Wm. Dingmann, d/b/a Granite City Transfer, of St. Cloud, Minn., appeared in opposition to the application in addition to the protesting railroads. At the further hearing, in addition to the parties noted above appearing in opposition to the application, Class 1 Western Rail Carriers also intervened in opposition thereto.

On February 10, 1952, the examiner issued his report and recommended order that the authority requested by the applicant be granted.

Exceptions to the examiner's report and recommended order were filed by Class 1 Western Trunk Line Rail Carriers, by Wm. Dingmann, d/b/a Granite City Transfer, and by the eastern railroads, except the C. & O. Ry. Co.

Thereafter the Commission, Division 5, with Commissioner Elliott dissenting, issued its report and order, decided May 24, 1954, granting the authority sought by the applicant and as recommended by the examiner except that it denied the authority from Grant County, South Dakota, to points in the states of Mary-

land, Connecticut, Massachusetts, Vermont and the District of Columbia, because of motor carrier service then in existence furnished by Wm. Dingmann, d/b/a Granite City Transfer, the protesting motor carrier.

Following the report and order of Division 5, a petition for reconsideration, and, in the alternative, a petition for a hearing de novo, was filed by the eastern railroads. A similar pleading was filed by the Class 1 Western Trunk Line Rail Carriers.

By order entered Nov. 12, 1954, the Commission, Division 5, granted the petitions for reconsideration but denied the petitions in all other respects. The entire Commission thereafter took up the matter and on Feb. 7, 1954, entered its order with an accompanying report, denying the application. This is the report and order which is challenged by the plaintiffs herein.

On March 7, 1955, Barre Granite Ass'n, Jones Bros., and Rock of Ages Corporation of Barre, Vermont, filed a petition for intervention, oral argument and reconsideration. Schaffer on the same date filed a petition for oral argument and reconsideration. On March 9, 1955, plaintiff, American Trucking Ass'n, filed a petition for leave to intervene and for reconsideration. Replies to these petitions were filed by eastern railroads, except the C. & O. Ry. Co., and by the Class 1 Western Trunk Line Rail Carriers.

On May 16, 1955, the Commission entered an order permitting the parties seeking intervention to intervene and denying the petitions in all other respects.

On August 8, 1955, plaintiffs filed the instant complaint in this court, seeking to set aside the Commission's report and order of Feb. 7, 1954, which denied authority, and the order of May 16, 1955, which permitted the parties seeking intervention to intervene and which denied the petitions for reconsideration.

The transcript of testimony before the Commission consists of 341 pages and 24 exhibits, in addition to numerous volumi-

nous pleadings which were filed with the Commission for its consideration.

The principal issues raised in this case are whether there is a reasonable and rational basis for the orders predicated upon the findings of the Commission and whether the Commission's actions in the premises complies with the Congressional mandate as set forth in Part 2 of the Interstate Commerce Act, 49 U.S.C.A. §§ 301–327, and the National Transportation Policy, 49 U.S.C.A. note preceding section 1.

■■ The scope of judicial review of the decisions of independent administrative bodies, in this case the Interstate Commerce Commission, is now well settled and is no longer open to question. The rule may be stated in various ways, one of which is, that findings of fact and permissible conclusions thereon, based upon substantial evidence, are final, conclusive and binding upon the Court. I. C. C. v. Union Pacific R. Co., 222 U.S. 541, 547–548, 32 S.Ct. 108, 56 L.Ed. 308. In U. S. v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 698, 90 L.Ed. 821, the Supreme Court said that the function of a reviewing court " * * * is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, a reviewing court is without authority to intervene."

■ In the development of the doctrine and rule of administrative finality, courts have uniformly held that it is the exclusive province and function of administrative agencies to draw legitimate inferences of fact and make findings and conclusions of fact, to appraise conflicting testimony or other evidence, to judge the credibility of witnesses and the evidence adduced by the parties, and to determine the weight of the evidence. Illinois Cent. R. Co. v. I. C. C., 206 U.S. 441–454, 27 S.Ct. 700, 51 L.Ed. 1128; I. C. C. v. Union Pacific R. Co., supra;

Alton R. Co. v. U. S., 315 U.S. 15–23, 62 S.Ct. 432, 86 L.Ed. 586. And what has just been said holds true even though the court believes that the decision of the administrative body lacks wisdom; though the court would weigh the evidence differently and reach a different conclusion from that of the agency; or that the final decision is inconsistent with prior determinations arising under analogous or similar basic circumstances. Rochester Telephone Corp. v. U. S., 307 U.S. 125, 146, at p. 139, 59 S.Ct. 754, 83 L.Ed. 1147; I. C. C. v. Northern Pac. R. Co., 216 U.S. 538, 544, 30 S.Ct. 417, 54 L.Ed. 608; Illinois Cent. R. Co. v. I. C. C., supra, 206 U.S. at page 454, 27 S.Ct. at page 704; U. S. v. Pierce Auto Freight Lines, Inc., supra.

■ Sec. 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, has codified the limitations of a judicial review of administrative decisions, and that act is controlling. See Riss & Co., Inc., v. U. S., 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345; Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; Acme Fast Freight v. U. S., D.C., 116 F.Supp. 97.

Plaintiffs in this case mainly urge that the Commission's conclusion is not supported by substantial evidence and therefore is unsupported by the record, is arbitrary and contrary to law. They also ask this Court to consider and make findings with respect to the fact that the public is entitled to service by both forms of transportation, trucks and rail.

■ In final analysis the Commission was required to determine that the proposed service of applicant is or will be required by the present or future public convenience and necessity under 49 U.S.C.A. § 307(a).

■ The extent of the Commission's authority in matters concerning the grant or denial of a certificate of public convenience and necessity has been considered in numerous judicial decisions and appears to be well settled. In an early leading case, Chesapeake & O. Ry. Co. v. U. S., 283 U.S. 35, 42, 51 S.Ct. 337,

339, 75 L.Ed. 824, the Supreme Court said:

> "There is no specification of the considerations by which the Commission is to be governed in determining whether the public convenience and necessity require the proposed construction. Under the Act it was the duty of the Commission to find the facts and, in the exercise of a reasonable judgment, to determine that question."

See also Texas & P. Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 273, 46 S. Ct. 263, 70 L.Ed. 578; State of Colorado v. U. S., 271 U.S. 153, 168, 46 S.Ct. 452, 70 L.Ed. 878; Powell v. U. S., 300 U.S. 276, 287, 57 S.Ct. 470, 81 L.Ed. 643.

In the case of Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051, the Supreme Court stated:

> "Public convenience and necessity is not defined by the statute. The nouns in the phrase possess connotations which have evolved from a half-century experience of the government in the regulation of transportation. When Congress in 1935 amended the Interstate Commerce Act by adding the Motor Carrier Act, it chose the same words to state the condition for new motor lines which had been employed for similar purposes for railroads in the same Act since the Transportation Act of 1920, § 402(18) and (20), 41 Stat. 477, 49 U.S.C.A. § 1(18, 20). Such use indicated a continuation of the administrative and judicial interpretation of the language. Cf. Case v. Los Angeles Lumber Co., 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110. The Commission has assumed, as its duty under these earlier subsections, the finding of facts and the exercise of its judgment to determine public convenience and necessity. This Court approved this construction. Chesapeake & O. Ry. Co. v. U. S., 283 U.S. 35, 42, 51 S.Ct. 337, 339,

75 L.Ed. 824. Cf. Gray v. Powell, 314 U.S. 402, 411–412, 62 S.Ct. 326, 332, 86 L.Ed. 301. The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity. Cf. Powell v. U. S., 300 U.S. 276, 287, 57 S.Ct. 470, 476, 81 L.Ed. 643. This, of course, gives administrative discretion to the Commission, Cf. McLean Trucking Co. v. U. S., 321 U.S. 67, 87–88, 64 S.Ct. 370, 380, 381, 88 L.Ed. 544, to draw its conclusion from the infinite variety of circumstances which may occur in specific instances."

██ Plaintiffs herein contend that the public is entitled to service by both forms of transportation, truck and rail, under a proper interpretation of the National Transportation Policy and the provisions of the Interstate Commerce Act.

As to the first contention, the Commission has spoken many times, and very recently in the case of International Transport, Inc. Extension—Tractors and Farm Machinery, No. MC 113855, and Kenosha Auto Transport Corp. Extension—Racine, Wis., No. MC 30837, Sub. 159, decided Dec. 16, 1955, and subsequent to its decision here under review. In these cases (decided together) the Commission, Division 1, said:

> "The basic issues raised by petitioners are, in substance:
>
> "(1) Whether the supporting shippers who allegedly are dependent solely upon rail carriers for transportation are entitled, as a matter of law, to motor as well as rail service.
>
> "(2) Whether each applicant has sustained the burden of proving that the supporting shippers are unable to obtain reasonably adequate service from the existing rail carriers and have a real need for the proposed motor service to supplement rail service."

The Commission did, in those cases, grant the authority sought, and applicant here urges these cases as authority for the contention that if the Schaffer application was before the Commission at the present time, the authority sought would be granted. We do not think these cases can be so interpreted. There the Commission said:

"At the outset it is well to stress that the mere absence of motor carrier service is not, standing alone, sufficient justification for the granting of an application to institute such service. In numerous proceedings where a grant of motor carrier authority has been made, it has been stated that the public is entitled to both motor and rail service. However, in all such proceedings it has been found, as required by the statute, that public convenience and necessity required the proposed service, and such findings were based on all of the facts of record in each proceeding including the non-existence of reasonably adequate motor carrier service. Any implication which might be drawn from the report in these proceedings that the mere absence of motor service, without more, is enough to justify a grant of motor carrier authority, is inaccurate."

The Commission there also said, in granting the authority, that the over-all rail service had been something less than reasonably adequate for the supporting shippers' needs. In the present case the full Commission found, upon the question of public convenience and necessity, that existing rail service was "reasonably adequate."

When called upon to review orders of the Commission denying or granting certificates of convenience and necessity based on the adequacy or inadequacy of existing services, the courts have approved the test used by the Commission. Capital Transit Co. v. U. S., D.C., 97 F.Supp. 614, 620; Hudson Transit Line v. U. S., D.C., 82 F.Supp. 153, 157; Mc-Lean Trucking Co. v. U. S., D.C., 63 F. Supp. 829, 832.

In confirming this general principle it seems quite clear that the Courts are of the same view as the Commission, namely, that the adequacy of the existing service is to be determined by weighing the needs of the shippers against the capabilities and facilities of the existing carriers without regard to whether the existing service is provided by the railroads or other motor carriers. See Interstate Commerce Commission v. Parker, supra.

While in the instant case the examiner did recommend the granting of the proposed authority and Division 5 of the Commission in a two to one decision ordered the authority granted (except as to certain points hereinbefore mentioned served by Dingmann), and the full Commission in a six to four decision, with one member not participating, did upon the same record deny the authority; such is not enough for this Court to cancel and set aside the final order of the Commission. The fact that such difference of opinion existed in the minds of the examiner, the members of Division 5 and the full Commission, all experts in the field of public transportation, serves to stress the fact that reasonable minds can and did differ upon the weight of the evidence and the conclusions to be drawn therefrom, in determining the ultimate question of the granting or refusal of the authority sought by the applicant, Schaffer.

We have carefully reviewed the evidence in this case, and without detailing it, we are unable to say that the Commission's conclusions and orders are not supported by substantial evidence, or that it acted illegally, arbitrarily or capriciously.

While we wish to note that had we been acting in place of the Commission in this case, we may have reached different conclusions, this fact will not justify our setting aside the report and orders of the Commission. I. C. C. v.

Union Pacific R. Co., supra; Mississippi Valley Barge Line Co. v. U. S., 292 U.S. 282, 287, 54 S.Ct. 692, 78 L.Ed. 1260; Rochester Telephone Corp. v. U. S., supra; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 497, 71 S.Ct. 456, 95 L.Ed. 456.

■ Plaintiff, American Trucking Association, particularly argues that the Commission in this case has acted contrary to and has not carried out the National Transportation Policy, 49 U.S.C.A. note preceding section 1. And, further, that the Commission in recent years has changed its policy in determining public convenience and necessity. We cannot agree with either of these contentions as a matter of law. The burden of proof showing a need for the proposed service under the provisions of Sec. 207(a) of the Interstate Commerce Act was upon the plaintiff. The Commission did not deny the application on the ground that rail service in and of itself was adequate. It purported to weigh all of the salient factors constituting proof of need for the service and in the light of the entire record found that there wasn't any need for the service which could not be handled adequately by existing carriers, both motor and rail.

■ The Commission is not required to set forth its findings in the terms of the provisions of the National Transportation Policy. In Luckenbach S. S. Co. v. U. S., D.C., 122 F.Supp. 824, affirmed per curiam, 347 U.S. 984, 74 S.Ct. 850, 98 L.Ed. 1120, Judge Hand, 122 F.Supp. at pages 827–828, said:

"It is clear that this expressed policy must serve as a guide to the Commission in all its decisions. United States v. Great Northern R. Co., 343 U.S. 562, 576, 72 S.Ct. 985, 96 L.Ed. 1142; McLean Trucking Co. v. United States, 321 U.S. 67, 82–84, 64 S.Ct. 370, 88 L.Ed. 544. However it seems equally clear that the Commission can not and should not be required to discuss each consideration expressed in the National Transportation Policy in every decision it renders. 'The basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented.' Alabama Great Southern R. Co. v. United States, 340 U.S. 216, 288, 71 S.Ct. 264, 272, 95 L.Ed. 225. It is only necessary that the essential basis of the Commission's order appear in the report so that a court can satisfy itself that the Commission has performed its function. See Newtex S. S. Corp. v. United States, D.C., S.D.N.Y., 107 F.Supp. 388, affirmed 344 U.S. 901, 73 S.Ct. 285, 97 L.Ed. 696; Capital Transit Co. v. United States, D.C., D.C., 97 F. Supp. 614, 621."

■ While the Commission in its final report changed its mind, this does not constitute reversible error subject to review by this court. In Beard-Laney, Inc., v. U. S., D.C., 83 F.Supp. 27, 33, affirmed 338 U.S. 803, 70 S.Ct. 64, 94 L. Ed. 486, Judge Parker said:

"The rules to be applied in reviewing the order of the Commission are not different because that order resulted from a reversal of a prior decision of the hearing division upon a petition for rehearing. The fact that a rehearing was granted shows that the questions involved were carefully considered and the ultimate decision of the division, which received the approval of the Commission, was the final and definitive action of the Commission, which is what we are authorized to review; and it is to be reviewed in the same way and under the same limitations as other reviewable orders. We may not substitute our judgment for that of the Commission because upon a rehearing and fuller consideration of the facts it has arrived at a different conclusion from that which its hearing division had first expressed. Lang Transp. Co. v. United States, D.C., 75 F. Supp. 915, 925."

While, as above indicated, this Court may have reached a different conclusion if it had been weighing the evidence in this case, we must and do find that the Commission acted within the scope of its authority, that it acted without abuse of its discretion, that its action was not arbitrary or capricious, and that there were adequate facts to support its findings and that its conclusions are not contrary to law.

For the reasons hereinbefore stated plaintiff's complaint will be dismissed.