QUICKIE TRANSPORT COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants,

and

Indianhead Truck Line, Inc., and Schirmer Transportation Company, Intervening Defendants.

No. 4–57–Civ.–65.

United States District Court D. Minnesota, Fourth Division.

Jan. 30, 1959.

Gordon Rosenmeier, Little Falls, Minn., for plaintiff. James E. Wilson, Washington, D. C., of counsel.

Fallon Kelly, U. S. Atty., St. Paul, Minn., Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn., Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Willard R. Memler, Attys., Dept. of Justice, Washington, D. C., for defendant United States.

Robert W. Ginnane, Gen. Counsel, Washington, D. C., and Francis A. Silver, Associate Gen. Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

Glenn W. Stephens, Madison, Wis., for intervening defendant Indianhead Truck Line, Inc. Stephens, Bieberstein, Cooper & Bruemmer, Madison, Wis., of counsel.

Donald A. Morken, Minneapolis, Minn., for intervening defendant Schirmer Transp. Co., Mackall, Crounse, Moore & Helmey, Minneapolis, Minn., of counsel.

Before SANBORN, Circuit Judge, and DONOVAN and DEVITT, District Judges.

DEVITT, District Judge.

This is an action to vacate and set aside an order of the Interstate Commerce Commission, dated July 2, 1956, which denied plaintiff's application for irregular route operating rights as a common carrier of petroleum from a recently constructed oil refinery near Pine Bend, Dakota County, Minnesota to certain points in Wisconsin and the upper peninsula of Michigan.

The Commission's denial of plaintiff's application was made in a consolidated proceeding which included related applications by other oil carriers. The two intervening defendants here, Indianhead Truck Line, Inc. and Schirmer Transportation Company, are competing petroleum carriers to the plaintiff and were successful applicants, along with Ruan Transport Company and Terminal Transport Company, for the grant of similar authority. Plaintiff's petition for reconsideration of the denial of its application, filed September 4, 1956, was denied by order of the Commission on December 18, 1956.

The gist of the Commission's order of July 2, 1956 is that Quickie had failed to establish that present or future public convenience and necessity required its proposed operation.

The plaintiff assigns as error this conclusion contained in the Commission's report:

"Considering the evidence, it is concluded that Schirmer, Terminal Transport, Ruan, and Indianhead should be authorized to handle the described traffic from the site of the Pine Bend refinery and points within two miles of Pine Bend to the destination areas hereinafter designated and that such services will be sufficient to handle shippers' motor carrier traffic from the described origin territory."

And also this conclusion:

"We feel that special consideration should be accorded to those carriers presently serving the origins to be affected by the new source of supply at Pine Bend and which already have permanent authority to serve a portion of the destination areas involved."

The essence of Quickie's complaint is that the record shows that all 5 of these interested carriers (Schirmer, Terminal, Ruan, Indianhead and Quickie) were shown by the record to be equally fit and able to render the services petitioned for, and that there is no basis for the distinction which resulted in the granting of the applications of the 4 other carriers and denying its application. It points out that the record reflects that the testimony by all of the shippers was at least as favorable to Quickie as to the others. By way of example, one of the shippers, Great Northern Oil Company, supported all 5 applications. Another shipper, Western Oil and Fuel Company, decidedly favored 2 of them—Schirmer and Quickie. Quickie urges that the Commission made no finding that traffic from Pine Bend would not support 5 carriers as well as 4. Quickie admits, however,

that there was no specific evidence offered by itself or by any of the carriers to show that the traffic would support 5 or any specific number of carriers.

Plaintiff's application for a certificate of authority was filed, and the Commission acted, under 49 U.S.C.A. § 307(a) which provides as follows:

"Subject to section 310, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: *Provided, however,* That no such certificate shall be issued to any common carrier of passengers by motor vehicle for operations over other than a regular route or routes, and between fixed termini, except as such carriers may be authorized to engage in special or charter operations."

■ It appears from this statute that it is the primary responsibility of the Commission to determine compliance with the requirements set out in the law. An applicant has the burden of showing that the proposed service " * * * is or will be required by the present or future public convenience and necessity; * * *".

■ As is well established, the authority of courts in reviewing the actions of an administrative body are very limited. We are confined to determining whether there is warrant in the law and the facts for the Commission's action. We can go no further. We cannot substitute our judgment for that of the Commission or challenge the wisdom of its

action. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 227, 228, 63 S.Ct. 589, 87 L.Ed. 724. For further recent expression of our limited authority in this respect, see Canadian Pacific Railway Company v. United States, D.C., 158 F.Supp. 248; Minneapolis & St. Louis Railway Co. v. United States, D.C., 165 F.Supp. 893.

It appears that the Pine Bend industrial area, some 10 miles south of the St. Paul-Minneapolis commercial zone, became a new major shipping point with the recent construction there of the Great Northern Refinery. Previously the 4 successful carriers, Schirmer, Terminal, Indianhead and Ruan, had been certificated as petroleum products carriers to serve the Twin Cities area, but because Pine Bend was geographically not within the established Twin Cities zone, these carriers could not operate from Pine Bend under that authority, and it was necessary for each of the 4 existing licensed carriers, as well as others who desired to be licensed, to file an application for authority to serve the Pine Bend area.

The record shows that the 4 successful carriers have been certificated since 1942 as carriers of bulk petroleum products from the Twin Cities zone to destinations in Wisconsin. Quickie has not been so certificated. It is apparent from reading the Commission's order that it based its decision to grant the applications of the 4 presently certificated carriers, and to deny the application of Quickie (and others who have not appealed the denial), on the grounds that a special consideration should be accorded to carriers presently serving the area generally, since the new business originating at Pine Bend was only supplanting part of that formerly originating within the Twin Cities commercial zone. In this connection the Commission said:

"It is evident that shipments from Pine Bend will move principally to points in Wisconsin and the Upper

Peninsula of Michigan and will supplant traffic now moving from principal sources of supply at Minneapolis and St. Paul."

It seems reasonable to us for the Commission to conclude, in the light of these unchallenged facts, that the 4 regularly licensed carriers now serving the Twin Cities area should have their authority extended to cover the Pine Bend area. In effect, this is merely a geographical enlargement of the Twin Cities shipping zone to serve approximately the same amount of traffic.

■ But Quickie urges that the evidence does not show that the traffic out of Pine Bend will not support 4 as well as 5 carriers. As a presumed expert in the field, the Commission concluded that since Pine Bend was partially supplanting the Twin Cities area as an origin point, and since the Twin Cities area was adequately served by 4 carriers, there was no need for an additional licensed carrier. By its own admission, Quickie offered no evidence to support a finding that the traffic required the certification of 5, 6, or any additional number of carriers. This was its burden.

Quickie also urges that it was the only applicant that proposed to serve all of Wisconsin and the upper peninsula of Michigan and that the 4 successful applicants do not serve certain sections of the area which it proposes to serve. But the simple answer to this contention is that there was no showing of any need for a petroleum carrier to serve all of the area, including the remote and sparsely settled sections.

■ We have fully considered all of the other arguments and contentions of the plaintiff and view them as being without merit. We conclude that the Commission's order is based on adequate findings supported by substantial evidence in the record before it, and that the Commission properly exercised its authority under the law and that the action of the Commission was not unreasonable, arbitrary or capricious.

The plaintiff's complaint is dismissed.