**GREAT NORTHERN RAILWAY COM-
PANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America and Inter-
state Commerce Commission,
Defendants,**

and

**Centennial Mills, Inc., Intervening
Defendant.**

**No. 4-59-Civ-5.**

United States District Court
D. Minnesota,
Fourth Division.

May 15, 1959.

Anthony Kane, Gen. Counsel, L. E. Torinus, Gen. Sol., St. Paul, Minn., Robert F. Garing, Asst. Atty. Gen., Seattle, Wash., Curtis H. Berg, St. Paul, Minn., for plaintiff Great Northern Ry. Co.

Victor R. Hansen, Asst. Atty. Gen., Fallon Kelly, U. S. Atty., St. Paul, Minn., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendant United States.

Robert W. Ginnane, Gen. Counsel, Francis A. Silver, Associate Gen. Counsel, I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

S. J. Wettrick, Seattle, Wash., for intervening defendant, Centennial Mills, Inc.

Before VOGEL, Circuit Judge, NORDBYE, Chief Judge, and DEVITT, District Judge.

DEVITT, District Judge.

This is an appeal from an order of the Interstate Commerce Commission establishing joint rates for the movement of wheat and wheat products from certain Montana points on the lines of the Great Northern Railway Company to points in Oregon, south of Portland, and to Cali-

fornia. Statutory jurisdiction is established.

The issue was raised in 1956 by Preston-Shaffer Milling Company by the filing of a complaint with the Interstate Commerce Commission alleging that certain combination rates then in effect in the described area were unjust, unreasonable and unduly prejudicial to it and unduly preferential to its competitors on other routes over which the more advantageous joint rates applied, all in violation of Section 3(1) of the Interstate Commerce Act (49 U.S.C.A. § 3(1), which, among other things, prohibts unreasonable prejudice and preference.

The matter was fully heard by a Hearing Examiner. The complainant, Preston-Shaffer, subsequently sold its mill at Milton-Freewater, Oregon, the place allegedly discriminated against by the Great Northern, to Centennial Mills, Inc., which company is an intervening defendant in this appeal.

The Hearing Examiner filed his report recommending dismissal of the complaint. Subsequently, on July 14, 1958, the Commission, Division 2, issued its report finding that the failure of the plaintiff to establish joint rates on the described traffic from Montana to the Oregon and California points, with transit at the Milton-Freewater location, was unduly prejudicial to the complainant's mill there, and was unduly preferential of competitor's mills located on routes over which joint rates did apply. The Commission also ordered the establishment of joint rates not in excess of the lowest joint rates then in effect over competing routes. 304 ICC 491 (1958).

On December 1, 1958, the entire Commission denied a petition for reconsideration of the order of its Division 2, and this appeal followed.

A short explanation of the issue in the light of the undisputed facts may be helpful.

For about the last ten years the mill at Milton-Freewater, Oregon, in the east-central section of the state, has been engaged principally in the milling of bread flour for California bakeries. This flour requires wheat with a high protein content. This type of wheat is grown principally in the central and north-central areas of Montana where hard spring wheat is raised in large volume. Approximately 79 percent of the wheat orginating in these areas is produced at places adjacent to the lines of the Great Northern. The Milton-Freewater mill has, in recent years, obtained 90 percent or more of its wheat supply from locations served by the plaintiff.

There are several flour mills in the northwestern states engaged in milling flour from hard spring wheat for the California market. There are mills at Spokane and Tacoma in Washington, at Portland, Oregon, at Great Falls, Montana, Ogden, Utah and elsewhere. The business is highly competitive.

Wheat purchased by Centennial Mills is moved over the route of the Great Northern to Spokane, Washington, over the Union Pacific to Milton-Freewater, there processed into flour, and again carried by Union Pacific to Portland Oregon. This entire movement is made under a joint rate, against which no objection is raised. But further movement of the shipment to points south of Portland and to California stations is made under the regularly applicable non-joint rate. The resulting combination rate between Montana stations and points south of Portland and in California is appreciably higher than the joint rate now enjoyed by Centennial's competitors over different, but similar, routes to the same destinations.

To illustrate the alleged discrimination by figures from the Commission's report, the present joint rate available to competing mills on other lines from certain Montana points to San Francisco or Los Angeles is $1.18½ per 100 pounds, while the combination rate available to complainant's mill at Milton-Freewater is $1.49 to San Francisco and $1.77 to Los Angeles, or 30½ cents and 58½ cents higher than the joint rate. This is the discrimination against which Centennial

complains and which the Commission held violated Section 3(1).

The Great Northern contends that there is no substantial evidence in the record to support the action of the Commission in ordering the joint rate, and that doing so and establishing a new through route will substantially short haul it in contravention of its right to the long haul secured by Section 15(4) of the Interstate Commerce Act (49 U.S.C.A. § 15(4).

█ In determining the issues before us, it is well to recall that the authority of the courts in reviewing the actions of administrative bodies is very limited. We are confined to determining whether there is warrant in the law and the facts for the Commission's action. That is the limit of our province. We cannot substitute our judgment for that of the Commission or challenge the wisdom of its action. United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 535, 536, 66 S.Ct. 687, 90 L.Ed. 821; Federal Security Administrator v. Quaker Oats Co., 1943, 318 U.S. 218, 227, 228, 63 S.Ct. 589, 87 L.Ed. 724. For further recent expressions recognizing our circumscribed authority in this respect, see Quickie Transport Co. v. United States, D.C.Minn.1959, 169 F.Supp. 826; Minneapolis & St. Louis Ry. Co. v. United States, D.C.Minn.1958, 165 F.Supp. 893; Canadian Pacific Ry. Co. v. United States, D.C.Minn.1958, 158 F.Supp. 248; Schaffer Transportation Co. v. United States, D.C.N.D.S.D.1956, 139 F.Supp. 444, 448, reversed on other grounds, 1957, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117.

█ We have reviewed the record and conclude that there is substantial evidence, considered as a whole, to support the Commission's finding and order.

From the summary of facts recited above and from other evidence in the record, the Commission could well find that complainant's mill at Milton-Freewater was in a disadvantageous competitive position because of the higher rate it was charged. The action of the Commission in concluding that the failure of the Great Northern to establish joint rates constituted undue prejudice to Centennial and undue preference to its competitors within the meaning of Section 3(1) of the Interstate Commerce Act is supported by the evidence and is not unreasonable.

We have examined each of the arguments advanced by Great Northern in support of its view that the evidence does not support the Commission's action, including its contention that no actual prejudice to Centennial has been shown, that Centennial has not lost business under the present combination rates, that by the continued use of "switch billing" any disadvantages could be minimized or obviated, and that Centennial is free to shift its California flour milling operations to one of its other mills where the joint rate is obtainable, and conclude that no purpose will be served by detailed discussions and observations about them. Suffice it to say that they do not convince us that the action of the Commission is unsupported by proof.

█ Plaintiff also contends that Congress has guaranteed each rail carrier the right to the longest haul possible on its own lines and to the revenue thus obtainable, and that this order deprives it of the long haul and will result in substantial loss of revenue.

The long haul assurance is contained in Section 15(4) of the Interstate Commerce Act, set out in the footnote [1] but,

1. "In establishing any such through route the Commission shall not *(except as provided in section 3 of this title\*,* and except where one of the carriers is a water line) require any carrier by railroad, without its consent, to embace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, (a) unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route

as will be observed by the italicized portion in the second and third lines, the prohibition against short hauling does not apply to cases under Section 3 of the Act. The Commission took action here under Section 3.

In effect the Congress has permitted the Commission to short haul where undue prejudice or preference is established. Baltimore & Ohio Ry. Co. v. United States, D.C.S.D.N.Y.1951, 100 F. Supp. 1002.

 The Great Northern states that as a result of the Commission's order it will suffer a minimum direct loss of $36,000 annually and a probable additional loss, through application of the lower joint rate to other mills, in excess of $115,000 per year. The Commission recognized this fact and made reference to it in its report 304 ICC at p. 497. But the fact that the order adversely affects the economic interests of the carrier is not grounds for denying the validity of it. Seaboard Air Line Ry. Co. v. United States, D.C.E.D.Va.1954, 131 F.Supp. 129, affirmed per curiam 1955, 349 U.S. 902, 75 S.Ct. 579, 99 L. Ed. 1239. The United States Supreme Court has observed that "self-interest of the carrier may not override the requirement of equality in rates." United States v. Illinois Central Ry. Co., 1923, 263 U.S. 515, 524, 44 S.Ct. 189, 193, 68 L.Ed. 417.

We have fully considered all of the arguments and contentions of the plaintiff and view them as being without merit. Our conclusion is that the Com-

mission's order is based on adequate findings supported by substantial evidence in the record before it, and that the Commission properly exercised its authority under the law and that its action was not unreasonable, arbitrary, or capricious.

The plaintiff's complaint is dismissed and the temporary restraining order is discharged. A stay of 30 days is granted.

---

which could otherwise be established, or (b) unless the Commission finds that the through route proposed to be established is needed in order to provide adequate, and more efficient or more economic, transportation: *Provided, however*, That in prescribing through routes the Commission shall, so far as is consistent with the public interest, and subject to the foregoing limitations in clauses (a) and (b) of this paragraph, give reasonable preference to the carrier by railroad which originates the traffic. No through route and joint rates applicable thereto shall be established by the Commission for the purpose of assist-

ing any carrier that would participate therein to meet its financial needs. In time of shortage of equipment, congestion of traffic, or other emergency declared by the Commission, it may (either upon complaint or upon its own initiative without complaint, at once, if it so orders, without answer or other formal pleadings by the interested carrier or carriers, and with or without notice, hearing, or the making or filing of a report, according as the Commission may determine) establish temporarily such through routes as in its opinion are necessary or desirable in the public interest." [* Emphasis added.]