GREAT NORTHERN RAILWAY COM-
PANY, Plaintiff,

v.

UNITED STATES of America and Inter-
state Commerce Commission,
Defendants

and

Hart Motor Express, Inc., Intervening
Defendant.

No. 4–61–Civ.–292.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 3, 1962.

R. W. Cronon, St. Paul, Minn., and Ed-
win S. Booth, Helena, Mont., for plain-
tiff Great Northern Ry. Co.

Robert W. Ginnane, Gen. Counsel,
Washington, D. C., and Francis A. Sil-
ver, Associate Gen. Counsel, Washington,

D. C., for defendant Interstate Commerce Commission.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Miles W. Lord, U. S. Atty., Minneapolis, Minn., for defendant United States.

Donald A. Morken, Minneapolis, Minn., for intervening defendant.

Before BLACKMUN, Circuit Judge, and DEVITT and LARSON, District Judges.

DEVITT, District Judge.

This is an appeal from an Order of the Interstate Commerce Commission granting motor vehicle operating rights to transport general commodities in Montana to Hart Motor Express, Inc., the intervening defendant.[1]

Statutory jurisdiction is established.

The plaintiff is a northern transcontinental railroad operating generally from St. Paul, Minnesota through Montana, to Seattle and Tacoma, Washington. Since 1935 it has conducted commercial truck operations auxiliary to its rail service in Montana. It sought and was denied authority similar to that granted to Hart. Great Northern Railway Company Extension—Alternate Route, Lewistown-Malta, Montana. M.C.C. 105, (Dec. 14, 1960). By decision filed contemporaneous with this opinion, we declined to set that action aside. Great Northern Ry. v. United States, No. 4–61–Civ–291, 209 F.Supp. 234 (D.Minn.1962).[2]

Hart Motor Express, Inc., the Intervening Defendant, is a motor carrier of general commodities, with the customary exceptions operating over regular routes between Chicago and the Twin Cities of St. Paul and Minneapolis in the east, and certain points in Montana in the west. More specifically, it operates from the east to Glasgow over U. S. Highway 2 and to Glendive over U. S. Highway 10. It also holds authority to operate between Williston and Glendive through Sidney; from Sidney to Culbertson, Montana, which is located on U. S. Highway 2 between Wolf Point, Montana and Williston; and from Glendive to Wolf Point through Circle and Vida. Service on this route is authorized at Sidney, but not at Glendive, Circle or Vida. It is authorized to serve the Glasgow Air Force Base,

1. Specifically, in the findings and Order from which appeal is taken, the Commission determined that the present and future public convenience and necessity required operation by applicant, in interstate or foreign commerce, as a common carrier by motor vehicle of general commodities, except those of unusual value, class A and class B explosives, livestock, household goods as defined by the Commission, commodities in bulk, and those requiring special equipment, between Glasgow, Montana and Billings, Montana, (a) from Glasgow over U. S. Highway 2 to Malta, Montana, thence over Montana Highway 19 to Lewistown, Montana, and thence over U. S. Highway 87 to Billings, and (b) from Glasgow over U. S. Highway 2 to Malta, thence over Montana Highway 19 to its junction with the unnumbered highway east of Roy, Montana, thence over such unnumbered highway to its junction with U. S. Highway 87 near Grassrange, Montana, thence over U. S. Highway 87 to Billings, and return over the same routes, serving all intermediate points, provided that service to and from points on U. S. Highway 2 west of Glasgow shall be restricted against the handling of shipments originating at or destined to points east of Glasgow; that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and its rules and regulations thereunder.

The Commission denied Hart's petition for additional authority to operate between Glendive, Montana and Billings, Montana from Glendive over U. S. Highway 10 to Billings, and return over the same route, serving no intermediate points; and serving Glendive, Circle, and Vida, Montana as intermediate points in connection with its presently authorized regular-route operations.

2. We have also, on this same date, filed our decision declining to set aside the action of the Commission in refusing to remove certain restrictions to Great Northern's motor vehicle operating authority in Montana. Great Northern Ry. v. United States, No. 4–61–Civ–290, 209 F.Supp. 230 (D.Minn.1962).

located about 20 miles north of Glasgow, and the Fort Peck Dam, located about 17 miles south of Glasgow, as off-route points. At the time of the hearing before the Commission, Hart was providing 5-day-a-week service from the Twin Cities to Glasgow, offering second morning delivery, and averaging two truckloads daily in summer and one in winter. It was also acting as delivering carrier in some shipments moving from Denver to Glasgow, interlining with Buckingham Freight Lines at Williston. Prior to mid-1958, applicant provided thrice-weekly service between Williston and Sidney, but since then it has interlined less-than-truckload traffic destined to Sidney with a motor common carrier not a party here.

The statute which authorizes the Commission to issue certificates of public convenience and necessity is 49 U.S.C.A. § 307(a), which, in so far as pertinent, reads as follows:

> "Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied * * *."

■ In this, as in all similar appeals from the decisions of administrative agencies, it must be remembered that the courts have a very limited function to perform. We are confined to determining whether there is warrant in the law and in the facts for the Commission's action. We can do no more. As much as we might feel inclined to do so at times, we cannot substitute our judgment for that of the Commission or challenge the wisdom of its actions. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Federal Security Administrator v. Quaker Oats Co., 318 .U.S. 218, 227, 228, 63 S.Ct. 589, 87 L.Ed. 724 (1943). For further recent expressions recognizing our circumscribed authority in this respect, see Great Northern Ry. v. United States, 172 F.Supp. 705 (D.Minn.1959); Quickie Transport Co. v. United States, 169 F.Supp. 826 (D.Minn.1959); Minneapolis & St. Louis Ry. v. United States, 165 F.Supp. 893 (D.Minn.1958); Schaffer Transportation Co. v. United States, 139 F.Supp. 444, 448 (D.S.D.1956), reversed on other grounds, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957).

■ The principal issue here is whether the Commission's finding that the present and future public convenience required the grant of the motor carrier service authority is supported by substantial evidence. The wide discretionary authority of the Commission to determine that question is well established. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).

Some fifteen witnesses appeared in support of the Hart application. Their testimony was summarized by the Commission as follows:

> Four of the supporting shippers are contractors, three of whom are working at the Glasgow Air Force Base, while the other is engaged in construction at the Fort Peck Dam. They are engaged in large-scale construction projects, involving the inbound movements of considerable quantities of supplies and materials. However, the volume of such traffic moving by motor carrier through the Billings gateway, and which is thus relevant to the instant proceeding, does not appear to be great in comparison with the volume moving by rail or in Hart's service from the Twin Cities. Two Glasgow clothing

dealers, three dealers in automobile, truck, or farm implement parts at Williston and two such dealers each at Poplar, Mont., and at Wolf Point, a Williston grain and feed terminal, and a Wolf Point wholesaler of tobacco, cigars, and candy also support the application. All use motor-carrier service for the transportation of a variety of commodities moving largely from Denver to their places of business or to customers at such points as Glendive, Circle, Vida, Roundup, and Lewistown. Two of the Williston shippers require service outbound from Williston to Vida, Circle, Glendive, and Billings. These supporting shippers would offer Hart relatively small shipments, averaging perhaps 100 to 500 pounds and moving once, twice, or three times a week. All these shippers are anxious to have available direct service from Billings, which they believe would result in the more expeditious movement of their shipments. For the most part they are familiar with Hart's service, and believe it could best provide them with the additional service which they desire owing to the fact that Hart now serves Williston and Glasgow and has terminals at these points. 84 M.C.C. 120–21 (1960).

This summary is a fair reflection of the testimony of these witnesses, and we believe that it, along with the other evidence, sufficiently supports the finding of "public convenience and necessity" made by the Commission.

Because of the low volume of traffic anticipated on the new road, it was not unreasonable for the Commission to conclude that only one of the four applicants should receive authorization to provide the service. The following language of the Commission sets forth the criteria it employed:

"In situations such as that presented here and in the related applications which are being disposed of at the same time, where several carriers wish to provide service over a particular route, the selection of the carrier or carriers to be granted the necessary authority must be based on a number of factors. To be considered are the abilities of the respective applicants to provide the needed service, the scope of the carriers' present operations and the effect of a grant of authority to a particular applicant upon each of the other applicants and upon other carriers operating in the area involved." 84 M.C.C. 123 (1960).

In its report, the Commission reviewed the evidence in regard to each of the above-stated criteria in concluding that Hart was the best-qualified applicant for the route. Hart's operations presently extend to Glasgow and to points on the High Line [3] east of Glasgow, to the Air Force Base there, and to the Fort Peck Dam. Hart has a terminal at Glasgow from which it has been providing satisfactory service to its customers on traffic moving from eastern points and, to a small extent, with interchange at Williston on traffic moving from Denver through the Billings gateway, and it operates sufficient equipment to provide the needed service.

 The applications of the other carriers were considered and denied by the Commission. As previously stated, we have this day declined to disturb the Commission's refusal to grant similar authority to the Great Northern. Only one of the several applicants was to be chosen. The determination in favor of Hart, and against the other applicants, was not without a rational basis. Such an exercise of administrative discretion cannot be disturbed by the courts. United States v. Pierce Auto Freight Lines, Inc., supra, 327 U.S. p. 531, 66 S. Ct. p. 695.

Great Northern also contends that inasmuch as Hart, in its application, stated

---

3. High Line is the term commonly used to describe the area across northern Montana served generally by U. S. Highway 2, and by the Great Northern Railway.

that the grant of authority for the entire route requested (see note 1, supra) was essential to a profitable operation, the Commission's action in disallowing a part of that application, while approving another part, adversely affected Hart's ability and fitness to operate the segment for which authority was granted.

It is true that Hart did not get all it asked for by way of operating rights in that it was denied authority to operate between Glendive and Billings on Highway No. 10 and to serve Glendive, Circle and Vida, Montana in connection with its presently authorized regular-route operations, but this is not to say that Hart cannot properly serve the route for which authority was granted. The Commission found that it could, saying that "an unrestricted grant of authority to operate between Glasgow and Billings over the new highway should enable Hart to conduct a profitable operation and to meet the needs of shippers located on the High Line. * * *" We think this is a permissible conclusion under the evidence. Hart insists that it can efficiently operate under the authority granted, as is evidenced by its electing to accept it, and by its vigorous support of the Commission's action in this lawsuit. Certainly it is within the Commission's authority to grant only a part of the authority requested. The statute, 49 U.S.C.A. § 307 (a), permits the Commission to grant a certificate authorizing "the whole *or any part* of the operations covered by the application * * *." It is well established now that the Commission has wide latitude in determining the extent of service to be rendered. Interstate Commerce Commission v. Parker, supra; United States v. Detroit & Cleveland Navigation Co., supra, and United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942).

We believe that the Commission's grant of only a part of the authority requested and the denial of the rest was a proper exercise of its discretion.

We have reviewed all of the evidence and considered the arguments of counsel for all parties, and conclude that the Commission reached a permissible conclusion based on substantial evidence in the record before it, and that its action was not arbitrary or capricious.

The plaintiff's complaint is dismissed.