GREAT NORTHERN RAILWAY COMPANY, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Consolidated Freightways Corporation of Delaware, Garrett Freightlines, Inc., Hart Motor Express, Inc., and United-Buckingham Freight Lines, Intervening Defendants.

No. 4-61-Civ.-290.

United States District Court
D. Minnesota,
Fourth Division.

Oct. 3, 1962.

Robert W. Cronon, St, Paul, Minn., and Edwin S. Booth, Helena, Mont., for plaintiff Great Northern Ry.

Robert W. Ginnane, Gen. Counsel, and Francis A. Silver, Associate Gen. Counsel, Washington, D. C., for defendant Interstate Commerce Commission.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Miles W. Lord, U. S. Atty., Minneapolis, Minn., for defendant United States.

Jerome Anderson, Billings, Mont., and Donald A. Morken, Minneapolis, Minn., for intervening defendants.

Donald A. Morken, Minneapolis, Minn., Peter T. Beardsley and William J. O'Brien, Jr., Washington, D. C., for American Trucking Assn., Inc.

Before BLACKMUN, Circuit Judge, and DEVITT and LARSON, District Judges.

DEVITT, District Judge.

This is an appeal from an order of the Interstate Commerce Commission denying the application of the plaintiff to remove certain restrictions from its previously granted certificates of public convenience and necessity to transport general commodities between certain points in Montana and between Williston, North Dakota and certain points in Montana.

Statutory jurisdiction is established.

The plaintiff is a northern transcontinental railroad operating generally from St. Paul, Minnesota through North Dakota and Montana to Seattle and Tacoma, Washington. Since 1935 it has conducted commercial truck operations auxiliary to its rail service in the states of North Dakota and Montana.

The intervening defendants conduct over-the-road truck operations in the area. They support the Commission's action.

In granting certificates of public convenience and necessity to the Great Northern in the North Dakota-Montana area, the Interstate Commerce Commission imposed certain restrictions which, in general, served to characterize the truck service to be rendered as supplemental to the rail service. By way of example, these restrictions prohibited truck shipments between certain key

railroad points (i. e., between Havre and Great Falls), required through bills of lading, and imposed prior or subsequent rail haul limitations. By its application to the Commission of May 5, 1958, the Great Northern sought to remove these restrictions so as to permit it to compete with the truck lines in the area by rendering all-motor service on motor-truck billings and at motor-truck rates.

Hearings were conducted before a designated Commission Examiner. On May 28, 1959, he recommended the denial of the application. Division I of the Commission issued its report and its order, both dated August 8, 1960, which, in effect, affirmed the Examiner. On April 28, 1961 the entire Commission entered its order which, in effect, affirmed the order of Division I by denying Great Northern's petition for reconsideration. This appeal followed. ·

Great Northern's principal argument is that the Commission made a mistake in denying its petition to remove the restrictions and that the action of the Commission was "arbitrary and without foundation in substantial evidence."

■■ This assertion calls for the restatement of a basic principle which must govern our actions in appeals of this kind, and that is that the judiciary has been assigned a very limited province in reviewing the action of governmental administrative bodies. In a case such as this, we are confined to determining whether there is warrant in the law and in the facts for the Commission's action. We can do no more. As much as we might feel inclined to do so at times, we cannot substitute our judgment for that of the Commission or challenge the wisdom of its actions. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946);

Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724 (1943). For further recent expressions recognizing our circumscribed authority in this respect, see Great Northern Ry. v. United States, 172 F.Supp. 705 (D.Minn.1959); Quickie Transport Co. v. United States, 169 F.Supp. 826 (D.Minn.1959); Minneapolis & St. Louis Ry. v. United States, 165 F.Supp. 893 (D.Minn.1958); Canadian Pacific Ry. v. United States, 158 F.Supp. 248 (D.Minn.1958); Schaffer v. United States, 139 F.Supp. 444, 448 (D.S.D. 1956), reversed on other grounds, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957).

The plaintiff is well aware of this limitation upon our powers, as it recognizes in the opening statement of its brief, but it insists that this is a case where reasonable minds would not accept the evidence as adequate to support the conclusion of the Commission and that accordingly the Commission's action was arbitrary and should be set aside.

■ We have read the briefs of the parties, the handy summaries of the testimony, together with all pertinent parts of the record, and conclude that there is substantial evidence in the record to justify the Commission's conclusion that the plaintiff failed to sustain its burden of showing that the removal of the restrictions was required by present or future public convenience and necessity.[1]

■ Of course, the applicant here had the burden of showing that the removal of the restrictions was required by the present or future public convenience and necessity. 49 U.S.C.A. § 307(a); 5 U.S.C.A. § 1006(c); Quickie Transport Co. v. United States, 169 F.Supp. 826, 828 (D.Minn.1959). And the wide discretionary authority of the Commission to

---

1. Contemporaneously, we have upheld the Commission's denial of alternate route authority to the Great Northern to transport general commodities between certain points in Montana, principally over new Montana Highway No. 19, Great Northern Ry. v. United States, 209 F.Supp. 234 (D.Minn.1962) and have declined to set aside the Commission's action in granting a similar authority to Hart Motor Express, Inc., Great Northern Ry. v. United States, 209 F.Supp. 238, (D.Minn. 1962).

determine that question is well established. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38 (1945).

Great Northern presented 37 witnesses before the Examiner, the testimony of whom has been conveniently summarized in its brief. These witnesses are shippers and receivers of freight, most of whom live in the smaller communities in Montana. In summary, they complain of inadequate service from presently authorized motor carriers. They assert that the service is slow and infrequent, and that they are not afforded door-to-door service, necessitating their picking up their own shipments at bulk terminals and paying delivery charges on it. It does not appear that these witnesses are large or frequent users of freight transportation services.

Two motor freight lines, Bostwick Freight Lines, Inc., and Burlington Truck Lines, intervened for the appellant. At the hearing before the Examiner, they complained of the inadequacies of interline connections with existing motor carriers.

For the protestants, it was represented that the presently certificated motor carriers now adequately serve all of the points for which the appellant seeks unrestricted service. In its report, the Commission summarized this testimony by stating that at least 3 motor carrier protestants serve every principal point in Montana involved in the application, while all but one of the smaller points are served by at least one protestant. It was made to appear that several of the protestants experienced decreases in the amount of tonnage handled in 1958 as compared to 1957, and that if the Great Northern were permitted unrestricted service, the competition and resulting diversion of traffic would necessitate the curtailment of much of the protestants' existing service.

The Great Northern makes some good arguments in support of the removal of restrictions. For example, it points to its Exhibit 7 (Appellant's Ex. 2 here), which reflects that between 1950 and 1957 the yearly tonnage handled by the truck lines rose from 208 million tons to 330 million tons, and that during the same period the inter-city, less-than-carload yearly tonnage handled by the railroads dropped from 12 million tons to less than 6 million tons, as a result of which, it is claimed, the Great Northern is losing money on its trucking operations in the Montana-North Dakota area. It asserts that under the present restrictions the motor carriers handle freight movements between the large communities, which are profitable, and turn over to Great Northern for handling, the shipments to the small communities, which are unprofitable. It urges that because of existing restrictions it cannot perform an economical and efficient truck operation in hauling the public's freight, and that continuing the restrictions is basically unfair and discriminatory.

■ It would be supererogatory to summarize all of the evidence in the record presented by each side or to refer to each argument advanced. It is sufficient to state that the evidence presented a fact question which the Commission decided against the plaintiff. The Commission concluded that there had been no showing of material defects in existing service, expected increases in available freight, or some other substantial grounds for the introduction of another carrier into the existing competitive situation. In our view, that finding is warranted by the evidence.

Great Northern also complains of the failure of the Commission to grant its petition for leave to file a late-filed Exhibit under the Commission's Rule 1.86, or, in the alternative, to grant it a further hearing under the Commission's Rule 1.101 so that it could show that the claimed inadequate service by the truckers continued even after the close of the hearings.

This petition was filed on July 10, 1959, some 9 months after the hearing

terminated, and 6 weeks after the recommended Report and Order of the Examiner was served.

 The Commission's general Rules of Practice, 49 U.S.C.A.Appendix, provide that the Commission will not receive in evidence or consider any documents, letters, or other writings submitted after the close of a hearing. Exceptions are made in those cases where the Commission expressly permits its reception, and when, before the close of the hearing, the presiding officer, acting upon his own motion, or upon the request of either party, or by agreement of the parties, requires that additional documentary evidence supplemental to the existing record be furnished by a stated time. The petition here filed was not based on either of these two exceptions. It would seem, therefore, that it was addressed to the sound discretion of the Commission and that we may not disturb the exercise of that discretion unless it constitutes a clear abuse of authority. United States v. Pierce Auto Lines, Inc., supra, 327 U.S. p. 535, 66 S.Ct. p. 697; Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); United States v. Northern Pacific Ry., 288 U.S. 490, 494, 53 S.Ct. 406, 77 L.Ed. 914 (1932).

Here it does not appear that there was an abuse of the Commission's discretionary authority. The evidence was, at least in part, cumulative of that already offered. There was a long delay in making the application and an unexplained gap of some 8 months in the statistical record contained in the proposed Exhibit. These are the reasons which the Commission assigns for its action in denying the petition and appear not unreasonable to us.

We have fully considered all of the arguments of the plaintiff and view them, not necessarily as unmeritorious, but as contentions which the Commission was within its authority in rejecting. We conclude that the Commission's Order is sustained by substantial evidence in the record before it, that the Commission did not improperly exercise its authority under the law, and that the Commission's action was not unreasonable, arbitrary or capricious.

The plaintiff's complaint is dismissed.